[172 N.C. App. 708 (2005)]

IN THE MATTER OF: J.A.G.

No. COA04-1257

(Filed 16 August 2005)

## 1. Appeal and Error— appealability—mootness

Although respondent mother contends the trial court abused its discretion by denying the mother's motion to dismiss the charge of child abuse at the close of petitioner's evidence, this argument is moot because: (1) the trial court dismissed the abuse allegation at the close of all evidence and the issue of whether the trial court should have dismissed the abuse allegation at the close of petitioner's evidence will not have any practical effect on this case; and (2) under N.C.G.S. § 1A-1, Rule 41(b), the trial court has the discretion to decline to rule upon a motion to dismiss until the close of all evidence.

## 2. Child Abuse and Neglect— proper care and supervision— environment injurious to health

Although the trial court did not err by adjudicating the minor child neglected on the grounds that he did not receive proper care and supervision from his father and lived in an environment injurious to his health, it erred by adjudicating that respondent mother neglected the child, because: (1) the trial court's finding that the child had not been appropriately cared for in the past was not supported by clear, cogent, and convincing evidence based upon the parents' habit of placing the child on the sofa without surrounding the infant with pillows or other form of restraint when the infant was unable to roll over and was not otherwise mobile during the prior instances when the parents placed him on the sofa, and further evidence indicated that the child had never missed any appointments with his pediatrician, was developing appropriately, and had no prior injuries; (2) the trial court's finding of fact that respondent was not willing to investigate the needs of the child in a safe environment is not supported by clear, cogent, and convincing evidence when in the one-week allotted time respondent provided DSS with at least four names of individuals who could potentially care for the child; (3) the trial court's findings of fact indicate that respondent was not at home when the child suffered his injuries, she was at the grocery store and summoned medical personnel upon learning of his injuries, and there was no evidence that respondent knew or reasonably

**IN RE J.A.G.**

[172 N.C. App. 708 (2005)]

should have known the father would harm the child; and (4) there were no allegations, evidence, or findings of fact related to any of the other bases for a finding of neglect as defined under N.C.G.S. § 7B-101(15).

**3. Child Abuse and Neglect— dependency—parent capable of providing care and supervision**

The trial court erred by adjudicating the minor child dependent and the portion of the order adjudicating him as such is reversed, because respondent mother neither abused nor neglected the child, and thus, the child had a parent capable of providing care and supervision.

**4. Child Abuse and Neglect— custody with DSS—no showing of neglect or dependency**

The trial court abused its discretion by ordering the minor child's custody should remain with the Department of. Social Services (DSS), because: (1) the trial court erred by finding and concluding that respondent mother neglected her son and by adjudicating the child dependent; (2) the record does not indicate that the mother was unwilling to comply with a trial court order directing that the father not have any contact with the child; and (3) at the time of the hearing, respondent was no longer residing with the father and was complying with the DSS family services case plan.

Judge LEVINSON concurring in a separate opinion.

Appeal by respondent-mother from orders entered 30 April 2004 by Judge Addie Harris Rawls in Johnston County District Court. Heard in the Court of Appeals 24 March 2005.

*Holland & O'Connor, by W. A. Holland, Jr. and Jennifer S. O'Connor, for petitioner-appellee Johnston County Department of Social Services; James D. Johnson, Jr. for Guardian ad Litem.*

*James R. Levinson for respondent-appellee.*

*Richard Croutharmel for respondent-appellant.*

HUNTER, Judge.

Respondent-mother presents the following issues for our consideration: Whether the trial court (I) abused its discretion in denying

IN RE J.A.G.

[172 N.C. App. 708 (2005)]

her motion to dismiss at the close of petitioner's evidence; (II) erroneously adjudicated her son neglected and dependent; and (III) abused its discretion in ordering the custody of her son to remain with the Johnston County Department of Social Services (hereinafter "DSS"). After careful review, we reverse in part the order below.

The pertinent facts of the instant appeal are as follows: DSS filed a juvenile petition on 30 January 2004 concerning J.A.G., a three-month-old infant. In the petition, DSS alleged J.A.G. was abused, in that he had sustained serious physical injuries by other than accidental means. DSS further alleged J.A.G. was neglected, on the grounds he did not receive proper care and supervision and lived in an environment injurious to his health. The petition also alleged the child to be dependent. The trial court issued a nonsecure custody order the same day.

The case came before the trial court for adjudication on 31 March 2004. The evidence presented at the adjudication hearing tended to show that J.A.G. suffered a severe head injury while in the sole care of his father. J.A.G. had no prior injuries and there were no prior concerns regarding abuse, neglect, or dependency. At the time of his injuries, J.A.G. resided with his mother and father, who were unmarried and unemployed.

On 22 January 2004, J.A.G. was returned home at approximately 5:00 p.m. after spending the previous night with his maternal grandmother. J.A.G. was acting normally and appeared to be fine. The maternal grandmother informed J.A.G.'s mother that she had observed J.A.G. roll over. This was the first time anyone had observed J.A.G. roll over on his own. Later that evening, J.A.G.'s mother went to the grocery store with her sister and niece at approximately 8:30 p.m. J.A.G.'s father remained at home and took care of his son. J.A.G.'s father contended he placed J.A.G. on the sofa and went to the kitchen to prepare a bottle for the child. When the father returned to the sofa, he found the baby on the carpeted floor, lying on his back and crying. The baby's arms and legs began to twitch. After J.A.G. began to twitch, his father called J.A.G.'s mother on her cellular telephone and explained what happened. As J.A.G.'s father did not speak English very well, J.A.G.'s mother called emergency personnel and immediately went home. While awaiting the arrival of the ambulance, J.A.G. began having a seizure. The paramedics determined J.A.G. needed to be airlifted to Pitt Memorial Hospital for assessment and treatment.

IN RE J.A.G.

[172 N.C. App. 708 (2005)]

Dr. Elaine Cabinum-Foeller testified she assessed J.A.G. and determined that he had a subdural hemorrhage in the front part of his brain, swelling, and a prominent retinal hemorrhage. In her expert opinion, J.A.G's injuries were not consistent with a short fall off of a sofa onto a rug and carpet; rather, his injuries were caused by an inflicted traumatic brain injury. She testified that, due to his injuries, J.A.G. was at risk for developmental problems and that long-term monitoring would be required. A social worker for DSS testified that J.A.G. had no visible external injuries and that he was moving his extremities as would be expected for a child his age (six months old).

While J.A.G. was in the hospital, DSS informed his mother that he would not be allowed to return home and asked for names of individuals who could appropriately care for J.A.G. The mother provided DSS with several names; however, DSS determined none of the potential placements were appropriate, and J.A.G. entered foster care after his discharge from the hospital. Shortly after J.A.G.'s release from the hospital, his father was arrested and charged with felony child abuse.

At the conclusion of the evidence, the trial court entered an order concluding there was clear, cogent, and convincing evidence that J.A.G. "was neglected [and dependent] . . . as it pertains to both parents" and "abused . . . as it pertains to the father[.]" The trial court entered a disposition order placing legal and physical custody of J.A.G. with DSS and relieving DSS of any reunification efforts with the father. The trial court did not cease reunification efforts with the mother, and she was allowed visitation. J.A.G.'s father has not appealed from the orders of adjudication and disposition. Respondent-mother now appeals from the adjudication and disposition orders of the trial court.

## I. Motion to Dismiss

[1] Respondent first contends the trial court abused its discretion in denying her motion to dismiss at the close of petitioner's evidence. Respondent moved to dismiss the abuse, neglect, and dependency allegations at the close of petitioner's evidence. After the trial court denied the motion, respondent presented evidence and then renewed her motion to dismiss. The trial court dismissed the abuse allegation, but denied respondent's motion on the remaining allegations. Instead of dismissing the abuse allegation at the close of all evidence, respondent argues the trial court should have dismissed the abuse allegation at the close of petitioner's evidence. We conclude this argument is moot.

"A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Roberts v. Madison County Realtors Assn.*, 344 N.C. 394, 398-99, 474 S.E.2d 783, 787 (1996). As the trial court dismissed the abuse allegation at the close of all evidence, whether the trial court should have dismissed the abuse allegation at the close of petitioner's evidence will not have any practical effect on this case. Moreover, under Rule 41(b) of the North Carolina Rules of Civil Procedure, the trial court has the discretion to decline to rule upon a motion to dismiss until the close of all evidence.

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or *may decline to render any judgment until the close of all evidence.*

N.C. Gen. Stat. § 1A-1, Rule 41(b) (2003) (emphasis added). We overrule this assignment of error.

## II. Adjudication

[2] By further assignment of error, respondent challenges several findings of fact and a conclusion of law regarding the trial court's determination that J.A.G. was neglected. "The allegations in a petition alleging abuse, neglect, or dependency shall be proved by clear and convincing evidence." N.C. Gen. Stat. § 7B-805 (2003). " 'A proper review of a trial court's finding of . . . neglect entails a determination of (1) whether the findings of fact are supported by "clear and convincing evidence," and (2) whether the legal conclusions are supported by the findings of fact.' " *In re Pittman*, 149 N.C. App. 756, 763-64, 561 S.E.2d 560, 566 (2002) (citations omitted). The "[c]lear and convincing" standard " 'is greater than the preponderance of the evidence standard required in most civil cases.' " *In re Smith*, 146 N.C. App. 302, 304, 552 S.E.2d 184, 186 (2001) (citation omitted). Clear and convincing evidence is evidence which should " ' "fully convince." ' " *Id.* (citations omitted).

First, respondent challenges the portion of Finding of Fact 8 which states: "The Court further finds that infarctions suffered by the child is . . . permanent as those brain cells will not regenerate." We

conclude this finding of fact is supported by clear and convincing evidence. Dr. Elaine Cabinum-Foeller, an expert in pediatric medicine and child abuse, testified that J.A.G. had "a[] defuse infarction or an area where the brain had not gotten good oxygen flow or blood supply for a period of time . . . that area of the brain was probably going to die." She explained that with an infarction, part of the brain tissue begins to swell, will become damaged, and will either scar down and/or just go away. The damaged portion of the brain typically will not regenerate. Based upon this expert testimony, the trial court's finding of fact that the areas affected by the infarctions will not regenerate is supported by clear and convincing evidence.

Respondent also argues "the trial court inappropriately found that the parents had neglected in the past to ensure that the child was appropriately cared for." Respondent contends this finding is not supported by clear and convincing evidence because the evidence indicates the infant did not have any prior injuries, was developing appropriately, had only lived in one residence, and had never missed any medical appointments with his pediatrician.

Finding of Fact 10 states in pertinent part:

The Court further finds that there exists concerns [sic] as to the parents['] ability to supervise the juvenile based upon a previous instance whereby the child fell out of a swing while under the care of the parents. Based upon the mother's testimony describing the child's previous fall from an infant swing, the Court finds that the fall was minor and that the child was not injured. The Court further finds that the injuries diagnosed on or about January 22, 2004 were not a result of the child falling out of the infant swing. The Court further finds that on or about January 22, 2004, the child did have a crib in the family home, however the crib was not utilized by the father on that occasion and further finds that the parents had previously placed the child on the sofa without appropriate restraint or pillows. The Court further finds that the injuries suffered by the juvenile were not consistent with the child falling off of the sofa and that the parents have neglected in the past to ensure that the juvenile was appropriately cared for.

Our review of the pertinent portion of Finding of Fact 10 indicates the trial court's finding that J.A.G. had not been appropriately cared for in the past was based upon the parents' habit of placing J.A.G. on the sofa without surrounding the infant with pillows or

other form of restraint. Respondent testified that she and J.A.G.'s father generally placed J.A.G. on the sofa with his back or side parallel to the back of the sofa. She also testified that she neither placed any devices on the sofa to prevent J.A.G. from falling off nor placed any pillows in front of the sofa in the event J.A.G. did roll off. However, J.A.G. was unable to roll over, and was not otherwise mobile during the prior instances when the parents placed him on the sofa. Furthermore, it is not unusual for parents to place an immobile infant on a sofa, couch, or bed. The evidence indicates J.A.G. had never missed any appointments with his pediatrician, was developing appropriately, and had no prior injuries. We conclude the finding of fact that the parents had neglected to appropriately care for J.A.G. in the past is not supported by clear and convincing evidence.

Respondent further challenges a portion of Finding of Fact 10, which states: "The Court further finds that while [DSS] was attempting to make a plan of care, the parents were not willing to investigate the needs of the child in [a] safe environment." In Finding of Fact 10, the trial court states:

> [DSS] attempted to work with the parents to identify alternative care arrangements for the juvenile. The mother informed [DSS] that she wanted to contact the relatives before they were explored as placement considerations by [DSS]. At the time of the child's discharge, the parents had provided names to the [DSS] for alternative care, however due to the timing of the parents providing the names to [DSS], [DSS] did not have sufficient time to fully explore those placements prior to the discharge.

The evidence at the hearing tended to show that J.A.G. was in the hospital for one week, 22 January 2004 through 30 January 2004. DSS became involved on 23 January 2004. During the week, DSS discussed with the parents possible relatives who could care for J.A.G. in the event he could not return home upon discharge from the hospital. Respondent provided DSS with the names of two relatives; however, DSS did not approve these relatives as appropriate placements. Respondent then provided at least two additional names, but DSS could not conduct a home study on these individuals prior to J.A.G.'s discharge from the hospital. Thus, in one week, respondent provided DSS with at least four names of individuals who could potentially care for J.A.G., if necessary. Based upon this evidence, we conclude the trial court's finding of fact that respondent was not willing to investigate the needs of the child in a safe environment is not supported by clear and convincing evidence.

Respondent next contends the trial court's findings of fact do not support the conclusion of law that J.A.G. was neglected "as it pertains to both parents[.]" Respondent contends there was no clear and convincing evidence that she neglected her son. A neglected juvenile is one

> who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.

N.C. Gen. Stat. § 7B-101(15) (2003). Here, the trial court concluded "by clear, cogent and convincing evidence that the juvenile was neglected pursuant to [N.C. Gen. Stat. §] 7B-101(15) as it pertains to both parents as the child lived in an environment injurious to his health and welfare and did not receive proper care and supervision." We conclude that, insofar as this conclusion reflects the trial court's determination that respondent neglected her child, it is not supported by the findings of fact.

First, we have already determined the trial court's finding of fact that respondent failed to appropriately care for J.A.G. was not supported by clear and convincing evidence. Second, the evidence and the trial court's findings of fact indicate that respondent was not at the home when J.A.G. suffered his injuries. Indeed, respondent was at the grocery store and summoned medical personnel upon learning of his injuries. Although the father indicated the child was injured by a fall from the sofa, the medical expert opined that J.A.G.'s injuries could not have occurred in that manner and opined his injuries were non-accidental in nature. Respondent's placement of J.A.G. on the sofa during the first few months of his life when he was immobile was therefore not the cause of his injuries and had not led to any prior injuries. Third, the evidence indicates J.A.G. was developing appropriately and had never missed any doctor's appointments. Fourth, there were no allegations, evidence, or findings of fact related to any of the other bases for a finding of neglect as defined in section 7B-101(15) of the General Statutes. Finally, there was no evidence

presented indicating respondent knew or reasonably should have known the father would harm J.A.G. Thus, the trial court erred in finding and concluding that respondent neglected J.A.G.

We note that our determination that the trial court erred in finding and concluding that respondent neglected her child does not alter the trial court's adjudication of J.A.G. as a neglected juvenile. The trial court made detailed findings, many of which respondent has not challenged, based on clear and convincing evidence that J.A.G. sustained a severe head injury as a result of abuse by his father. Thus, we conclude the trial court did not err in adjudicating J.A.G. a neglected child on the grounds he did not receive proper care and supervision from his father and lived in an environment injurious to his health.

[3] Respondent next challenges the trial court's conclusion of law that J.A.G. was dependent. The trial court stated in its order:

> The Court further finds by clear, cogent and convincing evidence that the child is a dependent child pursuant to N.C.G.S. 7B-101(9) as it pertains to both parents, as the parents were unable to provide proper care for the care or supervision [sic] and lacked an appropriate alternative care arrangement at the time of removal.

Under section 7B-101(9) of the North Carolina General Statutes, a dependent juvenile is defined as: "A juvenile in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2003).

As previously discussed, the trial court's finding of fact that respondent had not appropriately cared for him was not supported by clear and convincing evidence. Similarly, we have concluded the finding of fact that respondent was not willing to investigate the needs of J.A.G. in a safe environment was not supported by clear and convincing evidence. We have also concluded that respondent did not neglect her son. As respondent neither abused nor neglected J.A.G., we conclude J.A.G. was not dependent, because he had a parent capable of providing care and supervision. The trial court therefore erred in adjudicating J.A.G. dependent, and we reverse that portion of the order adjudicating him as such.

**IN RE J.A.G.**

[172 N.C. App. 708 (2005)]

*III. Disposition*

**[4]** Finally, respondent contends the trial court abused its discretion in its dispositional order by ordering J.A.G.'s custody to remain with DSS. We agree.

We have concluded that the trial court erred in finding and concluding that respondent neglected her son, and in adjudicating J.A.G. dependent. The trial court therefore had no grounds, under the facts and holding of this case, to support its decision to place custody of the child with DSS.

We note, however, that the trial court determined J.A.G. was abused and neglected as to his father; and therefore, the trial court relieved DSS of any efforts at reunification of the father and J.A.G. Indeed, a medical expert opined J.A.G. suffered serious injuries from a non-accidental incident while in the father's sole care. Thus, the trial court and DSS needed to ensure J.A.G. would suffer no further harm by the father. At the time of J.A.G.'s injuries, J.A.G. resided with his mother and father. However, by the time of the hearing, respondent lived with her mother and no longer resided with the father. Although respondent indicated she still believed her son was injured by a fall off of the sofa, the record does not indicate respondent was unwilling to comply with a trial court order directing that the father not have any contact with J.A.G. Indeed, as the trial court adjudicated J.A.G. abused and neglected, the trial court had full authority to order respondent to comply with such a directive. *See* N.C. Gen. Stat. § 7B-904(d1)(3) (2003) (granting the trial court authority to order that a parent of an abused, neglected or dependent child "[t]ake appropriate steps to remedy conditions in the home that led to or contributed to the juvenile's adjudication"). At the time of the hearing, respondent no longer resided with the father and was complying with the DSS family services case plan. As there were no grounds to prolong J.A.G.'s removal from the custody of his mother, the trial court abused its discretion in finding and concluding it was in the juvenile's best interest that his custody remain with DSS. We therefore reverse the portion of the order of disposition placing custody of J.A.G. with DSS.

In conclusion, we agree with respondent that the trial court erred in finding and concluding she neglected her child, and we therefore reverse that portion of the adjudication order. We also reverse the adjudication of dependency and the portion of the order of disposition placing custody of J.A.G. with DSS. We otherwise affirm the

order of adjudication. We remand this case to the trial court for proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.

Judge McCULLOUGH concurs.

Judge LEVINSON concurs in a separate opinion.

LEVINSON, Judge concurring.

I concur in the lead opinion, but write separately to explain the unusual appellate posture of this matter more fully, and to comment generally on the trial court's role in adjudicating petitions alleging abuse, neglect, and dependency.

As a preliminary matter, I first review the trial court's conclusions of law and the limited issues preserved for our consideration. The trial court concluded J.A.G. was a dependent juvenile "as to both parents" and, further, that the child was (1) neglected "as to" mother, and (2) neglected and abused "as to" father. Mother's appeal challenges, as unsupported, the conclusion of law that J.A.G. was a dependent juvenile, and that J.A.G. was neglected "as to" her. In making these arguments on appeal, she neither assigns error to, nor argues that (1) many findings related to father's conduct are unsupported by the evidence, or (2) the conclusions of law that J.A.G. was neglected and abused "as to" father are somehow infirm.

In her brief, mother presented the following question for review concerning whether the conclusion of neglect "as to" her could be sustained on appeal:

> Did the trial court commit reversible error and violate Respondent-Mother's substantial rights when it found and concluded that she had neglected the child?

The following is illustrative of mother's arguments on appeal, which focus on whether the juvenile can even attain the status of a neglected juvenile without first considering her own conduct:

> An abuse, neglect or dependency proceeding is inherently a multi-party case involving the petitioner, the respondent-parents, and the child. Thus, treating the outcome only as a conclusion of the child's status is inappropriate. In order for a parent to abuse, neglect, or render dependent a child, there must be

some nexus between the child's injuries and a parent's act or failure to act.

Here, the evidence showed that Respondent-Mother neither harmed the child nor did she have any idea that [father] could have or would have harmed the child. . . . Borrowing a page from tort law, a master is not responsible for an agent's intentional tort where the agent's act is outside the scope of the master's business, the master has not authorized the agent to act tortiously, and the master has not ratified the agent's tortious act. *Snow v. DeButts*, 212 N.C. 120, 122, 193 S.E. 224, 226 (1937). Likewise, here Respondent-Mother did not condone or authorize an assault on the child, if that is in fact what happened.

One must assume that the trial court believed JAG's injuries were non-accidental and that Respondent-Father was the perpetrator of JAG's injuries. . . . However, . . . there is no evidence showing that Respondent-Mother had previously failed to supervise JAG properly[.]

In support of her argument that the trial court may conclude that a child is abused, neglected, or dependent "as to" a parent, mother cites only *In re McCabe*, 157 N.C. App. 673, 580 S.E.2d 69 (2003). The *McCabe* panel did hold that "there was clear, cogent and convincing evidence to support the trial court's adjudication of neglect and abuse by respondent." *Id.* at 680, 580 S.E.2d at 74 (emphasis added). The fact the *McCabe* panel utilized the words "by respondent" is not persuasive authority that this Court evinced an intention to convert the subject of these adjudications—the status of the juvenile—into an inquiry about the individual or individuals who may or may not have contributed to the circumstances which support the juvenile's status as abused, neglected, or dependent. Moreover, mother's use of master-servant concepts from our body of tort law is, of course, completely inapposite to these juvenile matters.

The trial court's function, when confronted with petitions for abuse, neglect, and/or dependency, is to adjudicate whether the subject juvenile has the status of one or more of these conditions. *See* N.C.G.S. § 7B-101(1) (2003) ("abused juvenile"); N.C.G.S. § 7B-101(9) (2003) ("dependent juvenile"); and N.C.G.S. § 7B-101(15) (2003) ("neglected juvenile"). In doing so, the trial court will oftentimes make findings related to the commission and/or omission of acts on the part of parent(s) or other caretakers. This, however, changes nei-

IN RE J.A.G.

[172 N.C. App. 708 (2005)]

ther the nature of what the court is adjudicating, nor the central issue on appeal: the juvenile's status. Indeed, the presence or absence of culpability of a particular parent or other caretaker in an adjudication of abuse, neglect, or dependency is not necessarily associated with whether the statutory thresholds of these conditions are present. *Compare* N.C.G.S. § 7B-1111 (2003) (in termination of parental rights proceeding, petitioner must prove that the parent's individual conduct satisfies one or more grounds). Alternatively stated, it doesn't necessarily matter who did what. This has long been the law in North Carolina:

> In determining whether a child is neglected, the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent.

*In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984) (discussing neglect generally). In my view, the same holds true of adjudications of abuse and dependency.

Frankly, it is as unsound for adjudications to be "as to" any parent or caretaker, as it is equally clear that findings concerning persons' individual responsibility or culpability are relevant to the disposition. In short, mother's argument, that "for a parent to abuse, neglect, or render dependent a child, there must be some nexus between the child's injuries and a parent's act or failure to act[,]" misses entirely the nature of these adjudication proceedings. Accepting mother's argument would amount to recasting adjudications into hearings about the adult caretakers in J.A.G.'s life when these "*In re*" proceedings are, instead, about the conditions and circumstances surrounding the child. In her brief, mother boldly asserts that "treating the outcome only as a conclusion of the child's status is inappropriate." This contention is, in my view, simply contrary to the law of North Carolina.

When a parent takes an appeal from the order on adjudication and disposition of a petition alleging abuse, neglect, and/or dependency, and she challenges the adjudicatory conclusions of law, it necessarily follows that the status of the juvenile is before this Court irrespective of whether the same depended, in part or in full, on the appealing parent's individual conduct. Notwithstanding the dual "as to" conclusions of law by the trial court in the instant case, mother could nonetheless have challenged all the findings of fact and conclusions of law in the order on adjudication and disposition.

**IN RE J.A.G.**

[172 N.C. App. 708 (2005)]

Fashioning adjudication orders on abuse, neglect, and dependency "as to" anyone misapprehends our juvenile statutes. In my view, the words "as to" are nothing more than surplusage. Our trial courts should avoid fashioning adjudication orders in this way and should, instead, continue to follow the paramount practice of not concluding juveniles are anything "as to" anyone. Although our panel endeavored to resolve the issue of whether mother's conduct contributed to the status of neglect in this appeal, subsequent appeals that do not fully preserve for appellate review the juvenile's status as abused, neglected, or dependent may yield dismissals by this Court.

Finally, I review the status of this juvenile matter. In addition to reversing the trial court's conclusion that mother's conduct contributed to the circumstances giving rise to J.A.G.'s status as a neglected juvenile, this Court has also reversed the court's conclusion that J.A.G. was a dependent juvenile. The findings of fact that we have concluded are unsupported by the evidence, and the conclusions of law reversed by this Court, cannot be utilized in later juvenile proceedings to collaterally establish any one or more of these things. J.A.G. retains his status as an abused and neglected juvenile by virtue of conclusions of law that are not challenged on appeal. Moreover, while I have agreed with my colleagues that the current record on appeal only supports the return of custody of J.A.G. to mother, it is also my view that, because the order of disposition was based, in large measure, on findings and conclusions of law that have now been reversed on appeal, the trial court should necessarily be directed to enter a new disposition order after giving all persons an opportunity to be heard. Significantly, though, in reversing the order of disposition insofar as it continued custody of J.A.G. with DSS, this Court has not held that the trial court either lacks jurisdiction over this child, *see* N.C.G.S. § 7B-201 (2003), or that it does not still have the authority and means to fashion a new dispositional order and subsequent custody review orders that comport with the best interests of the juvenile. *See* N.C.G.S. § 7B-903 (2003) (dispositional alternatives); N.C.G.S. § 7B-1000 (2003) (modification); N.C.G.S. § 7B-906 (2003) (custody review).