IN THE MATTER OF: K.G.
No. COA09-287
Court of Appeals of North Carolina
Filed July 21, 2009
This case not for publication
E. Marshall Woodall; and Duncan B. McCormick, for Petitioner-Appellee Harnett County Department of Social Services.
Janet K. Ledbetter for Respondent-Appellant-Father.
No brief filed for Respondent-Mother.
Pamela Newell Williams for Guardian ad Litem.
ROBERT C. HUNTER, Judge.
T.G. (respondent-father) and D.G. (respondent-mother) (collectively respondents) are the biological parents of K.G., a minor. On 23 September 2008, the Harnett County Department of Social Services (petitioner) filed a juvenile petition alleging K.G. was a neglected and dependent juvenile. The trial court granted petitioner nonsecure custody of K.G. and held an adjudication and disposition hearing on the juvenile petition on 21 November 2008. Prior to the hearing, respondent-mother stipulated to K.G.'s status as being a neglected and dependent juvenile. At the close of the hearing, the trial court found that K.G. was a neglected and dependent juvenile.
In its adjudication and disposition order entered 19 December 2008, the trial court set the plan for K.G. as reunification with respondents, continued custody of K.G. with petitioner, and authorized placement of K.G. with an older sibling. Respondent-father filed notice of appeal from the adjudication and disposition order on 8 January 2009. Respondent-mother is not a party to this appeal. After careful review, we affirm in part and reverse in part.
Our review of an order of a trial court adjudicating a juvenile neglected or dependent entails a determination of "(1) whether the findings of fact are supported by `clear and convincing evidence,' and (2) whether the legal conclusions are supported by the findings of fact[.]" In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) (internal citations omitted). "Clear and convincing evidence is evidence which should `fully convince.'" In re J.A.G., 172 N.C. App. 708, 712, 617 S.E.2d 325, 329 (2005) (quotation omitted). "[T]he trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997). Additionally, the North Carolina Rules of Evidence apply to adjudication proceedings determining whether a juvenile is abused, neglected, or dependent. N.C. Gen. Stat § 7B-804 (2007).
Respondent-father first argues that the trial court erred in allowing a social worker to testify about testimony respondents gave at a prior hearing on an application for a domestic violence protective order (DVPO) made by respondent-mother against respondent-father. Respondent-father contends the testimony of the social worker amounts to inadmissible hearsay evidence under Rule 802 of the North Carolina Rules of Evidence. We disagree.
We first note that respondent-father cites to this Court's opinion in In re J.M., R.H. Jr., C.S., A.S., R.M., & B.M., 190 N.C. App. 379, ___ S.E.2d ___ (2008) in support of his argument. Respondent-father's reliance on J.M. is misplaced, and he further misinterprets our holding in that case.
"`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2007). "Hearsay is not admissible except as provided by statute or by [the North Carolina Rules of Evidence]." N.C. Gen. Stat. § 8C-802 (2007). In J.M., this Court vacated the adjudication and disposition order of the trial court, holding the trial court erred by: (1) not allowing the respondent-parent to present evidence at the adjudication hearing, or to confront the evidence against her; and (2) taking judicial notice of, and relying solely upon, the testimony from two prior hearings, one of which was never recorded. J.M., 190 N.C. App. at 382-83, ___ S.E.2d at ___. This Court held the trial court erred in relying on the testimony from the prior hearings, where the trial court took judicial notice of the testimony and the petitioner, "never moved for the admission of testimony from any prior hearing, and no showing was made that any prior testimony satisfied the Rules of Evidence for the admission of hearsay evidence." Id. at 383, ___ S.E.2d at ___.
Here, unlike in J.M., the trial court allowed respondents to present evidence and did not take judicial notice of any testimony from prior hearings. In the instant case, a social worker attended a prior domestic violence hearing regarding an incident of violence between respondent-father and respondent-mother. The same social worker later had conversations with both respondent-parents about this same incident. At trial, the social worker was asked a few questions about what was said at the domestic violence hearing; however, the vast majority of her testimony concerned her independent conversations with both respondent-parents, not what she witnessed at the domestic violence hearing. Additionally, the statements made by respondent-parents at the domestic violence hearing were their own statements and were admitted against respondent-parents at the adjudication and disposition hearing. Accordingly, the statements are admissible exceptions to the hearsay rule as statements of a party-opponent under Rule 801(d) of our Rules of Evidence. N.C. Gen. Stat. § 8C-1, Rule 801(d)(A) ("A statement is admissible as an exception to the hearsay rule if it is offered against a party and it is his own statement, in either his individual or a representative capacity . . . ."). These assignments of error are overruled.
Respondent-father also argues the trial court erred in concluding that K.G. was a neglected and dependent juvenile. The Juvenile Code defines a neglected juvenile, in part, as one "who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; . . . or who lives in an environment injurious to the juvenile's welfare. . . ." N.C. Gen. Stat. § 7B-101(15) (2007). Additionally, "this Court has consistently required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline." In re Safriet, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (citations and quotation marks omitted). A dependent juvenile is defined as one "in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2007). "Under this definition, the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." In re P.M., 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005).
Here, the trial court made the following findings of fact in support of its conclusion that K.G. was a neglected and dependent juvenile:
9. The family has had a history with the DSS agency in Wake and Harnett Counties since the birth of the juvenile herein. Case management services were extended to the family from both DSS agencies.
10. After case management services were commenced, the parents moved to New York without informing the Harnett DSS.
11. On or about September 23, 2008, DSS received a CPS report relative to domestic violence between the parents and the use by both parents of impairing substances to include crack cocaine use by both parents and prescription drug use by the father.
12. At a domestic violence hearing on September 23, 2008, involving allegations of violent actions of the father against the mother, the parents revealed a history of domestic violence between themselves and the excessive use of illegal drugs and other impairing substances.
13. In the presence of the juvenile or in the alternative while the juvenile was under the care of the parents, the parents used impairing substances to include crack cocaine, marijuana, prescription drugs illegally obtained[,] and the excessive use of alcoholic beverages. The use of such impairing substances placed the juvenile at risk of harm.
14. In the presence of the juvenile or in the alternative while the juvenile was under the care of the parents, the parents participated in acts of domestic violence. At times the child observed or heard the acts of domestic violence; the domestic violence occurring between the parents created a risk of harm for the juvenile, both physically and emotionally.
15. With the father's knowledge and permission, the mother has engaged in prostitution to obtain money to purchase illegal drugs.
16. On or about August 21, 2000, the respondent mother had four (4) older children removed from her care after an adjudication of neglect on or about August 21, 2000, over issues of illegal drug usage and acts of domestic violence by the father of said juveniles against the respondent mother.
17. DSS was unable to extend services to the juvenile and the parents to prevent the filing of this proceeding and the placement of the juvenile in out-of-home placement.
18. The father has not protected the juvenile when he allowed the mother to leave and then return [come back and forth] to the home during and after her binges of substance abuse.
Respondent-father argues the trial court's findings of fact numbers 9, 10, 11, 13, 14, 15, 16, 17, and 18 are not supported by clear and convincing evidence and do not support the trial court's conclusion that K.G. is a neglected and dependent juvenile. Respondent-father further contends there was no proof K.G. suffered some physical, mental, or emotional impairment, or substantial risk of impairment. We agree with respondent-father that finding of fact number 15 is not supported by any evidence, and thus cannot support the trial court's conclusions of law. Further, none of the trial court's findings of fact address the second prong in the definition of a dependent juvenile concerning the availability to respondents of any alternative child care arrangements. Accordingly, we must reverse the trial court's conclusion that K.G. is a dependent juvenile. In re B.M., 183 N.C. App. 84, 90, 643 S.E.2d 644, 648 (2007) ("Findings of fact addressing both prongs must be made before a juvenile may be adjudicated as dependent, and the court's failure to make these findings will result in reversal of the court."). However, based on our review of the evidence in the record before this Court, we hold the trial court's remaining findings of fact are supported by clear and convincing evidence, which in turn, support its conclusion that K.G. is a neglected juvenile.
At the adjudication hearing, Christa Reid ("Ms. Reid"), an investigator assessor and case manager in the employ of petitioner, testified to statements made by respondents at a DVPO hearing in 2008 and to two previous incidents between respondents in 2004 and 2006 in Wake County involving domestic violence and substance abuse. At the 2008 DVPO hearing, respondent-mother testified that while K.G. was spending the night at a friend's house, respondents smoked crack cocaine with some friends and then got into a fight when respondent-mother took the crack pipe with her to get more drugs. Respondent-mother further stated that she and respondent-father had taken Vicodin earlier that day and had sold some Vicodin to the woman who was keeping K.G. for the night. Respondent-father denied smoking crack cocaine, but admitted taking non-prescribed Vicodin for pain in his hand, and testified that the fight ensued when he attempted to stop respondent-mother from getting any drugs. Respondent-father said that four or five months out of the year, respondent-mother vanished from the home on drug binges. The previous incidents in 2004 and 2006 resulted in K.G. being taken out of the home and put into a kinship placement. The 2006 incident resulted in the entry of a DVPO after respondent-father pulled respondent-mother away from K.G. and onto the ground.
Ms. Reid further testified that in 2000, respondent-mother's other children were removed from respondent-mother's care and placed in the custody of relatives. Ms. Reid testified that the case plan in the instant matter was made with respondent-mother because respondent-father never made contact with the petitioner, and soon after the development of the case plan, respondents left North Carolina and moved to New York. Additionally, Ms. Reid testified that respondents told her different stories regarding the presence of K.G. during their drug use and incidents of domestic violence. Respondent-mother said that sometimes K.G. was home and asleep in her bedroom when respondents used drugs, but respondent-father said K.G. was not present when they used drugs.
Further, testimony from Stephanie Starcher ("Ms. Starcher"), the adult daughter of respondent-mother and step-daughter of respondent-father, supports the trial court's finding that domestic violence occurring between respondents created a risk of harm for K.G., both physically and emotionally. Ms. Starcher testified to an incident of domestic violence that occurred in December of 2004. Respondent-mother had taken K.G. to a crack house, and later that day, respondents became involved in an altercation, wherein respondent-father threatened to set respondent-mother's hair on fire while holding her head to a gas stove-top. Respondent-father later pushed over the Christmas tree while holding K.G. Ms. Starcher also testified that respondents fled with K.G. to New York, even though K.G. had been placed in the custody of Wendy Scarsman, and that respondent-mother was only supposed to have supervised visitation with K.G.
The trial court's findings of fact are supported by the testimony of Ms. Reid and Ms. Starcher. Additionally, the past and present domestic violence protective orders obtained by respondent-mother against respondent-father, and respondent-father's recent entry of a guilty plea to assault on a female, demonstrate respondents' history of domestic violence. We hold these findings of fact support the trial court's conclusion of law that K.G. is a neglected juvenile. See In re T.S., III & S.M., 178 N.C. App. 110, 114, 631 S.E.2d 19, 23 (2006) (affirming the trial court's conclusion that the juveniles were neglected juveniles based upon several instances of serious domestic violence; illegal drug activity; illegal possession of a firearm; and repeated violent and angry outbursts in the presence of the children, which contributed to their injurious environment and placed them at substantial rick of physical and emotional harm), aff'd, 361 N.C. 231, 641 S.E.2d 302 (2007).
Affirmed in part and reversed in part.
Chief Judge MARTIN and Judge ELMORE concur.
Report per Rule 30(e).