IN THE MATTER OF: G.W., A Minor Child.
No. COA09-744
Court of Appeals of North Carolina
Filed November 17, 2009
Richard E. Jester, for respondent-appellant father. J. Edward Yeager, Jr., for petitioner-appellee Washington County Department of Social Services.
Deana K. Fleming, for the Guardian ad Litem to the respondent-appellee minor child.
ERVIN, Judge.
Billy ("respondent father") and Kathy W. (collectively, respondent parents) are the father and mother of the minor child, G.W. ("Gina").[1] On 25 November 2008, the Washington County Department of Social Services ("DSS") received a report alleging that the juvenile was being sexually abused by a neighbor and family friend (alleged abuser). After investigating this report and following the occurrence of certain other events which will be discussed in more detail below, DSS filed a juvenile petition alleging that Gina was a neglected and dependent juvenile, took Gina into its custody, and placed Gina with a foster family on 17 December 2008.
After a hearing held on 28 January 2009, the trial court entered an order on 4 March 2009 finding Gina to be a neglected juvenile. In a separate disposition order entered on the same date, the trial court directed that Gina remain in DSS custody, established reunification with the respondent parents as the plan for Gina, instructed Gina to participate in community support mental health services, ordered the respondent parents to complete scheduled diagnostic mental health exams, and allowed respondent parents to have unsupervised visitation with Gina in the discretion of DSS.
The trial court conducted review hearings on 25 February and 1 April 2009. At the 1 April 2009 review hearing, the trial court heard a motion filed by respondent father pursuant to N.C. Gen. Stat. § 1A-1, Rule 60 on 27 March 2009 in which he sought amendments to the initial adjudication and disposition orders. The trial court entered orders on 1 April 2009 amending its initial adjudication and disposition orders in response to certain requests made by respondent father. On 2 April 2009, respondent father noted an appeal to this Court from the 4 March 2009 adjudication and disposition orders and the 1 April orders amending the initial adjudication and disposition orders.
On appeal, respondent father contends that the trial court erred in concluding that Gina is a neglected juvenile. After careful consideration of the record in light of the applicable law, we conclude that respondent father's challenge to the trial court's orders is without merit.
"Review of a trial court's adjudication of neglect requires an examination of (1) the findings of fact which must be supported by clear and convincing evidence, and (2) the conclusions of law which must be supported by the findings of fact." In re D.B.J., ___ N.C. App. ___, ___, 678 S.E.2d 778, 780 (2009) (citing In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000)). "Clear and convincing evidence is evidence which should fully convince." In re J.A.G., 172 N.C. App. 708, 712, 617 S.E.2d 325, 329 (2005) (internal quotations and citation omitted). "[T]he trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997) (citations omitted). On appeal, we must keep in mind that determining "`the weight to be given the testimony and the reasonable inferences to be drawn therefrom'" is the responsibility of the trial court and that, in the event that "different inference[s] may be drawn from the evidence," the trial court "`alone determines which inferences to draw and which to reject.'" In re McCabe, 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003) (quoting In re Hughes, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985). However, the trial court's conclusions of law in juvenile cases are subject to de novo review. See In re D.H., 177 N.C. App. 700, 703, 629 S.E.2d 920, 922 (2006).
A "neglected juvenile" is defined as one:
who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
N.C. Gen. Stat. § 7B-101(15) (2007). "[T]his Court has consistently required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline." In re Safriet, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (internal quotations and citation omitted).
In this case, the trial court concluded that Gina was a neglected juvenile "in that the child did not receive proper care and supervision from the respondent parents[.]" Although this statement is listed in the adjudication order as Finding of Fact No. 8, it is, in reality, a conclusion of law, and will be evaluated as one. See In re Helms, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997). Thus, the ultimate issue before this Court raised by respondent father's appeal is the extent, if any, to which this conclusion is supported by the trial court's findings of fact.
Elsewhere in its adjudication order, the trial court found that the respondent parents signed a safety assessment during the initial DSS investigation into the allegations that Gina had been sexually abused in which they agreed not to allow any contact between Gina and the alleged abuser. The trial court further found that the respondent parents allowed the alleged abuser to have contact with Gina after signing the safety assessment. More specifically, the trial court found that, when law enforcement and a social worker employed by DSS went to Gina's home on 15 December 2008, the alleged abuser was hidden in the family residence. Although the trial court found that Gina had gone to the alleged abuser's home on only one occasion since the signing of the safety assessment, the alleged abuser had come to Gina's home several times when the respondent parents were present. However, despite the fact that the trial court found that Gina had seen the alleged abuser after the respondent parents had signed the safety assessment, there had been no sexual encounters since the beginning of DSS' involvement in this situation. The trial court's findings of fact are supported by the testimony of respondent father and a social worker employed by DSS and by stipulations entered into the record by the trial court, without objection, stemming from information obtained during an in-chambers interview of the juvenile conducted by the trial court in the presence of counsel for the parties. As a result, the trial court's findings of fact have adequate evidentiary support and establish that, despite having been advised of reports that Gina had been sexually abused by the alleged abuser and despite having agreed not to allow the alleged abuser to be in Gina's presence, respondent parents allowed the alleged abuser to be in Gina's presence both in their own home and in the alleged abuser's residence.
According to respondent father, the trial court's findings of fact fail to support its conclusion that Gina was a neglected juvenile because such a finding "requires parental knowledge or wilful knowledge of something damaging to a child." According to respondent father, he believed Gina's denials that she had been sexually abused by the alleged abuser and did not, for that reason, think that it was necessary to comply with the letter of the safety assessment. In addition, respondent father suggests that he maintained his relationship with the alleged abuser at the behest of the Washington County Sheriff's Department, who wanted him to remain on good terms with the alleged abuser in order to keep the alleged abuser from becoming overly suspicious while the alleged abuser was under investigation. Once he was satisfied that the alleged abuse had occurred, respondent father argues that he acted appropriately and did everything that he could to protect his daughter from harm. As a result, respondent father contends that, since he did not believe that Gina had been abused and since no further sexual contact occurred after respondent parents executed the safety assessment, the trial court could not properly find Gina to be a neglected juvenile on the basis of this set of facts.
The argument advanced by respondent father overlooks the fact that, as noted above, this Court has held that findings that a juvenile "was substantially at risk due to the instability of her living arrangements" and "through repeated exposure to violent individuals," Helms, 127 N.C. App. at 512, 491 S.E.2d at 676, sufficed to support a finding of neglect. See also Safriet, 112 N.C. App. at 752, 436 S.E.2d at 901-02 (stating that "this Court has consistently required that there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide `proper care, supervision, or discipline'"). The trial court's findings clearly indicate that respondent parents' conduct created a "substantial risk" that additional sexual abuse would occur.
At the time that they signed the safety assessment, respondent parents were on notice that a report had been made that Gina had been sexually abused by the alleged abuser. The fact that Gina denied the abuse had occurred did not mean that further investigation was not warranted and that no precautions were necessary while that process occurred. The failure of respondent parents to prevent Gina from having any contact with the alleged abuser despite their agreement to do just that created a risk that Gina would be exposed to additional sexual abuse. The fact that no further sexual abuse apparently occurred does not obviate the fact that respondent parents' conduct put Gina at substantial risk of harm, which is all that is necessary for a finding of neglect. Similarly, aside from the fact that respondent father did not claim that he was maintaining contact with the alleged abuser at the request of the Sheriff's Department until the dispositional hearing, the record does not establish that it was necessary for respondent father to allow Gina to have contact with the alleged abuser in violation of the safety assessment in order to cooperate with law enforcement or that law enforcement was aware of or wanted respondent father to violate the safety assessment between respondent parents and DSS. As a result, we do not find any of respondent father's challenges to the trial court's determination that Gina was a neglected juvenile to have merit. In essence, respondent father's arguments challenge the weight that the trial court gave to certain testimony and the inferences that the trial court chose to draw from the evidence, which are matters within the exclusive purview of the trial court. See McCabe, 157 N.C. App. at 679, 580 S.E.2d at 73.
Thus, we conclude that the trial court's findings of fact support its conclusion that Gina was a neglected juvenile. For that reason, we overrule respondent father's assignment of error and affirm the trial court's orders of adjudication and disposition.
Affirmed.
Judges WYNN and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] "Gina" is a pseudonym that will be used throughout the remainder of this opinion in order to protect the privacy of the juvenile and to facilitate ease of reading.