TYSON, Judge, dissenting.
The trial court's findings of fact are not supported by clear, cogent and convincing evidence and are insufficient to support the court's adjudication and conclusion that A.L.T. ("Anna") and C.T. ("Clara") were neglected juveniles by both parents under N.C. Gen.Stat. § 7B-101(15) (2013) or controlling precedents. I respectfully dissent from the majority's opinion and would rule the trial court erred when it adjudicated the juveniles to be neglected.
I. Standard of Review
As stated in the majority's opinion, our standard of review is "whether the trial court's findings of fact are based upon clear, cogent and convincing evidence and whether the findings support the conclusions of law." In re Baker, 158 N.C.App. 491, 493, 581 S.E.2d 144, 146 (2003) (citations and internal quotations omitted). If the findings of fact are supported, we review de novo the trial court's conclusions of law. In re J.S.L., 177 N.C.App. 151, 154, 628 S.E.2d 387, 389 (2006).
*462 II. Analysis
A. Finding of Neglect
The trial court found Anna and Clara were neglected juveniles under N.C. Gen. Stat. § 7B-101(15). The majority's opinion sets forth findings by the court, which purport to support its adjudication. The court's findings are minimal as to neglect; one act of physical discipline. Uncontroverted testimony indicated the act occurred after more moderate responses and discipline for Clara's poor behaviors had failed. We have held that spanking, which also leaves a bruise, is not neglect. In re C.B., 180 N.C.App. 221, 636 S.E.2d 336 (2006), aff'd, 361 N.C. 345, 643 S.E.2d 587 (2007). There was only one uncorroborated act of physical discipline toward Anna.
Based on four-year-old Clara's testimony, the court found she was fearful of a spanking from her father. The court further found Father had difficulty controlling his anger, had punched a hole in a wall in the family home and, prior to the removal of the children, was not receiving consistent treatment for his anger.
Testimony showed that Father was taking Effexor medication to help manage his anger for close to a year prior to the adjudication. No evidence showed Father's anger resulted in the neglect of his children at the time of the adjudication or any probability of neglect in the future. The trial court must "consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect" at the time of the hearing or in the future. In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984).
Father's brief cites a relevant quote from In re Stumbo:
[N]ot every act of negligence on the part of parents or other caregivers constitutes "neglect" under the law and results in a "neglected juvenile." Such a holding would subject every misstep of a care giver (sic) to the full impact of subchapter I of chapter 7B of the North Carolina General Statutes resulting in mandatory investigations ... and the potential for petitions for removal of the child or children from their *328 family for custodial purposes ... and/or ultimate termination of parental rights....
In re Stumbo, 357 N.C. 279, 283, 582 S.E.2d 255 (2003). An isolated act of physical discipline does not support a conclusion and adjudication of neglect. In re C.B., supra.
*463 B. Hearsay Evidence
The North Carolina Rules of Evidence require matters and assertions the trial court admits and considers as relevant and material at the adjudication hearing to be otherwise admissible and not be subject to exclusion. N.C. Gen.Stat. § 7B-804 (2013) ("where the juvenile is alleged to be abused, neglected ... the rules of evidence in civil cases shall apply"). Pure hearsay evidence by a four-year-old declarant, whose age carries a presumption of incompetency to testify, was admitted for the truth of the matter asserted. This hearsay was not admissible under any exception, and was improperly presented and considered in the adjudication regarding Father's purported touching of Clara that she made to a social worker and Clara's aunt. This allegation was denied in court by the declarant. The majority finds the court "can be presumed to have disregarded the incompetent evidence because the court made no findings pertaining to the hearsay evidence in support of its adjudication of neglect and dismissed the sexual abuse allegation."
However, the trial court ordered Father to obtain a sexual assault intervention service ("SAIS") as part of the dispositional plan after dismissing the allegations of abuse and entering the adjudication of neglect. This requirement is not reflective of an appropriate step to remedy conditions of neglect and clearly shows the trial court did not disregard the inadmissible hearsay in its adjudication.
In re J.B., cited by the majority, is inapplicable in the present case. In J.B., the trial court admitted into evidence prior disposition orders in the underlying juvenile court action. In re J.B., 172 N.C.App. 1, 16, 616 S.E.2d 264, 273 (2005). Respondent-mother complained the trial court was required to exclude the review orders, because they were based upon a lower evidentiary standard. Id. at 16, 616 S.E.2d at 273. This Court disagreed and recognized "that in a termination of parental rights proceeding, prior adjudications of abuse or neglect are admissible, but they are not determinative of the ultimate issue." Id. (citing In re Huff, 140 N.C.App. 288, 300, 536 S.E.2d 838, 846 (2000), disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001) ).
In J.B., we noted the respondent-mother was unable to overcome the well-established supposition that the trial court in a bench trial "is presumed to have disregarded any incompetent evidence." Id. (citation and quotation marks omitted). Judicial notice in a termination hearing of a prior order from the adjudication is entirely different from allowing inadmissible and inflammatory hearsay barred by the Rules of Evidence to be asserted and admitted at the adjudication hearing.
*464 The exclusion of such inadmissible and inflammatory hearsay is to prevent the petitioner from dragging allegations into the proceeding solely calculated to purport to show "the character of a person in order to show that he acted in conformity therewith." N.C. R. Evid. Rules 404(b), 802 (2013). To allow and credit such inadmissible evidence at any stage opens wide the barn doors, and requires respondents to chase after the running horses, which the statute requires to be locked in the stable.
C. Prior Acts of Respondent-Father
The trial court, over objection, also allowed testimony of a consensual sexual encounter over ten years previously, between Father at age 11 or 12 and his cousin at age 9. This information was irrelevant and inflammatory and should have been excluded.
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
N.C. R. Evid. 404(b).
Rule 404(b)"state[s] a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant."
*329 State v. Coffey, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (emphasis original). Exclusion of evidence is required if its "only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." Id.
Our Supreme Court stated, "[t]he dangerous tendency of [ Rule 404(b) ] evidence to mislead and raise a legally spurious presumption of guilt requires that its admissibility should be subjected to strict scrutiny by the courts." State v. Johnson, 317 N.C. 417, 430, 347 S.E.2d 7, 15 (1986).
Here, as in State v. Al-Bayyinah, 356 N.C. 150, 567 S.E.2d 120 (2002), cited by Father, the prior "wrong, or act" is both dissimilar to the incident alleged in the petition and is remote in temporal proximity. " Rule 404(b) evidence, however, should be carefully scrutinized in order to adequately safeguard against the improper introduction of character evidence against the accused." Id. at 154, 567 S.E.2d at 122. "To effectuate these important evidentiary safeguards, the rule of inclusion described in Coffey is constrained by the requirements of both similarity and temporal proximity." Id., 567 S.E.2d at 123 (citations omitted).
*465 These actions occurred over ten years before and involved two pre-teens, as testified by the female cousin involved in the incident as "being curious," rather than actions between an adult and a child, as alleged in the petition. It is difficult to see any other reason why petitioner asserted this evidence, other than an attempt to show propensity of Father's character. Although the court dismissed the petitioner's allegations of abuse for lack of evidence, the ruling does not show the trial court ignored these clearly inadmissible assertions.
D. Neglect as to Respondent-Mother
The stated purpose of Chapter 7B in the initial adjudication of neglect is "[t]o provide procedures for the hearing of juvenile cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents. " N.C. Gen.Stat. § 7B-100(1) (2013) (emphasis supplied). The trial court's findings of neglect all relate to alleged wrongdoing by Father. I find error in the trial court's conclusion concerning Mother that the "juveniles do not receive proper care, supervision, or discipline from the juveniles' parent, ... and lives (sic) in an environment injurious to the juveniles' welfare."
DSS asserts the presence and allowance by Mother of Father's physical discipline is sufficient to support her adjudication of neglect. I disagree. In J.A.G., infant J.A.G. suffered a brain injury in the care of his father while the mother was away from home. In re J.A.G., 172 N.C.App. 708, 617 S.E.2d 325 (2005). This Court held it was error to conclude that the mother failed to provide proper care and supervision and the child lived in an environment injurious to his health and welfare where there was evidence the child was previously developing appropriately, had not missed doctor's appointments, and no evidence indicated the mother knew or reasonably should have known the father would harm J.A.G. Id. at 715-16, 617 S.E.2d at 331.
Here, Mother knew of Father's prior bursts of anger issues. Mother testified she demanded Father to get help, and it took time to find a doctor approved by their insurance and for trials of several treatments to arrive at the correct medication. Mother's action demonstrates a commitment to protect herself and her children, while supporting and maintaining her marriage to her spouse and the father of her children.
We all agree the trial court's findings of fact regarding neglect were based on both inadmissible and controverted evidence. Mother testified that no domestic violence was aimed at her or the children by respondent father. Father acknowledged "popping" Clara in the mouth, but denied any other actions as alleged by petitioner.
*466 The incident of physical discipline found by the trial court does not reach the threshold of clear, cogent and convincing evidence required to support findings of facts to support an adjudication of neglect.
The majority and concurring opinions cite In re T.M., as a basis for the trial court ignoring certain controverted findings as the challenged findings were not necessary to support the ultimate conclusion of neglect.
*330 T.M., 180 N.C.App. at 547, 638 S.E.2d at 236. However, under the admissible evidence in this case, there are not, as in T.M., the "ample other findings of fact [to] support an adjudication of neglect" on behalf of Mother. Id. This precedent does not support the trial court's adjudication and ultimate conclusion.
Finally, the majority and concurring opinions cite In re Montgomery to support an adjudication of neglect on behalf of Mother, where there was an absence of findings in the adjudication order to support the mother's fault or culpability in contributing to the adjudication of neglect. In Montgomery, the trial court found the parents failed to send the children to school, failed to provide beds and adequate living space despite having resources to do so, the parents separated and provided no living place for the children, the mother was unstable, delusional and failed to take medicine to control her conditions, and the father had failed to pay reasonable portion of cost of caring for children. Id. at 112-13, 316 S.E.2d at 254.
Our Supreme Court reversed a Court of Appeals decision, which appeared to require petitioners "to establish a child's intangible, non-economic needs were not being fulfilled" by the parents before parental rights could be terminated. Id. at 106, 316 S.E.2d at 250.
Where the evidence shows that a parent has failed or is unable to adequately provide for his child's physical and economic needs, whether it be by reason of mental infirmity or by reason of willful conduct on the part of the parent, and it appears that the parent will not or is not able to correct those inadequate conditions within a reasonable time, the court may appropriately conclude that the child is neglected. In determining whether a child is neglected, the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent. Therefore, the fact that the parent loves or is concerned about his child will not necessarily prevent the court from making a determination that the child is neglected.
*467 Id. at 109, 316 S.E.2d at 252. In re Montgomery is not only inapplicable to the facts at bar, it highlights the standard and weight of evidence required of petitioner to prove neglect of Mother, in the dearth of any evidence or paucity of findings to support an adjudication. No incidents, acts or omissions by Mother support an adjudication of neglect. Seeking assistance for both her children and husband and working to maintain her marriage and parent their children is not neglect or abuse under the statute.
III. Conclusion
For these reasons, I vote to reverse the trial court's adjudication of neglect and remand for entry of an order to support the parents and require DSS to make continued efforts to reunify these children with their parents.