An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-609

Filed: 6 October 2015

Moore County, No. 14 JA 67

IN THE MATTER OF: C.M.G.

Appeal by respondents from order entered 23 February 2015 by Judge Robert M. Wilkins in Moore County District Court. Heard in the Court of Appeals 14 September 2015.

> *R. Ward Medlin for petitioner-appellee Moore County Department of Social Services.*
>
> *Womble, Carlyle Sandridge & Rice, LLP, by Janie H. Morgan, for guardian ad litem.*
>
> *Wait Law, P.L.L.C., by John L. Wait, for respondent-appellant father.*
>
> *J. Thomas Diepenbrock for respondent-appellant mother.*

DIETZ, Judge.

Respondents appeal from an order adjudicating their son "Carl"[1] to be an abused, neglected, and dependent juvenile. In October 2013, the trial court

---

[1] We use pseudonyms to protect the privacy of C.M.G. and his siblings.

adjudicated two other juveniles then living with Respondents to be abused and neglected. The trial court found that Respondents had engaged in multiple acts of domestic violence in front of the juveniles; that Respondent-mother had thrown objects at the children and otherwise endangered them; and that Respondent-father had sexually abused one of the juveniles, a five-year-old girl.

Carl was born while court proceedings involving the other juveniles were ongoing. Respondent-mother concealed her pregnancy from DSS and traveled to a hospital in another county for Carl's delivery.

DSS later learned of Carl's birth, took him into nonsecure custody, and filed a juvenile petition alleging that he was abused, neglected, and dependent. The trial court adjudicated Carl abused, neglected, and dependent based on the prior abuse and neglect of the other juveniles previously under Respondents' care, as well as the near total failure of Respondents to address the conditions and safety concerns identified in that earlier juvenile proceeding.

As explained below, we affirm the trial court adjudications of neglect and dependency. There is ample evidence in the record to support the trial court's findings on those grounds, and those findings, in turn, support the trial court's conclusions of law. But we reverse the adjudication of abuse. Unlike the statutory language governing neglect, the statutory standard for abuse does not provide that abuse of other juveniles in the same home is automatically relevant. Instead, the

petitioner must show a connection between the past abuse and the risk of future abuse to the juvenile in question. Here, the record does not contain sufficient evidence to support the trial court's conclusion that, based on Respondent-father's past sexual abuse of a five-year-old girl, there was a substantial risk that Respondents would inflict serious physical injury on infant Carl. Accordingly, we reverse the adjudication of abuse but affirm all remaining portions of the trial court's order.

## Facts and Procedural History

Respondents are married. They previously resided with their daughter "Martha," who was born in March 2007, and Respondent-mother's daughter "Beth," who was born in May 2000. In January 2013, the Moore County Department of Social Services ("DSS") obtained nonsecure custody of Martha and Beth after initiating juvenile abuse and neglect proceedings. In October 2013, the trial court adjudicated Martha to be neglected and Beth to be neglected and abused. The court found that Respondents had engaged in multiple acts of domestic violence in front of the girls; that Respondent-mother had thrown objects at both girls and particularly at Beth; that Respondents had operated a "sham" home school since July 2011, leaving both girls "substantially behind and below grade level[;]" and that Respondent-father had sexually abused five-year-old Martha "on more than one occasion." Based on these adjudications, the court ordered Respondents to be placed on the list of responsible

individuals maintained by the Department of Human Services pursuant to N.C. Gen. Stat. § 7B-311(b) (2013).

Respondents refused to cooperate with DSS or comply with the trial court's orders and they failed to obtain the necessary evaluations, treatment, and other services required for reunification with Martha and Beth. On 5 March 2014, DSS moved to terminate Respondents' parental rights as to Martha and Beth. The trial court entered orders on 14 May 2014 terminating Respondents' parental rights on grounds of neglect, dependency, and willful failure to make reasonable progress to correct the conditions that led to Martha and Beth's removal from their home. *See* N.C. Gen. Stat. § 7B-1111(a)(1), (2), (6) (2013).

Carl was born in April 2014, approximately one month before the hearing on DSS's petition to terminate Respondents' parental rights to Martha and Beth. Respondent-mother concealed her pregnancy from DSS, traveling to a hospital in another county for Carl's delivery. When she was placed in jail for indirect contempt of court on 9 July 2014, Respondent-mother left Carl with Respondent-father.

On 11 July 2014, DSS received a child welfare report regarding an infant child in Respondent-father's care. DSS located Carl in Mecklenburg County, North Carolina on 15 July 2014, took him into nonsecure custody, and filed a juvenile petition alleging that he was abused, neglected, and dependent. The petition cited Respondents' prior abuse and neglect of Carl's sisters and Respondents' subsequent

failure to address the conditions and safety concerns that led to the termination of their parental rights as to the two girls.

After hearing evidence on 8 and 9 January 2015, the trial court entered an order adjudicating Carl an abused, neglected, and dependent juvenile on 23 February 2015. The court maintained Carl in DSS custody and granted Respondents two hours of weekly supervised visitation. Respondents each filed timely notices of appeal from the adjudication and disposition order.

## Analysis

### I.    Appellate Jurisdiction

Respondent-mother has filed a petition for writ of certiorari to review the trial court's order in the event we find a jurisdictional defect in her notice of appeal. By order entered 13 August 2015, this Court denied the guardian ad litem's motion to dismiss Respondent-mother's appeal for failure to file a properly signed notice within the thirty-day period prescribed by N.C. Gen. Stat. § 7B-1001(b) (2013).

Under N.C.R. App. P. 3.1(a), a respondent's notice of appeal in an abuse, neglect, or dependency proceeding must be signed by both the respondent and her trial counsel, if she is represented by counsel. However, "if a party technically fails to comply with procedural requirements in filing [a notice of appeal] with the court, the court may determine that the party complied with the rule if the party accomplishes the *'functional equivalent'* of the requirement." *Von Ramm v. Von*

*Ramm*, 99 N.C. App. 153, 157, 392 S.E.2d 422, 424 (1990) (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317, 101 L.Ed.2d 285, 291 (1988)).

Here, Respondent-mother filed two timely notices of appeal from the order entered on 23 February 2015. The first notice is only signed by Respondent-mother, while the second notice is only signed by counsel. We conclude that Respondent-mother's two timely filed notices—each bearing one of the two signatures required by Rule 3.1(a)—amount to the "functional equivalent" of a proper notice of appeal. Accordingly, we deny Respondent-mother's petition for writ of certiorari as moot.

## II.     Challenged Factual Findings

This Court reviews an adjudication of abuse, neglect, or dependency under N.C. Gen. Stat. § 7B-807 (2013) to determine whether the trial court's findings of fact are supported by "clear and convincing competent evidence" and whether the court's findings, in turn, support its conclusions of law. *In re Helms,* 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997). Findings supported by competent evidence as well as all uncontested findings are binding on appeal. *Id.* We review a trial court's conclusions of law *de novo. In re J.S.L.*, 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006).

We agree with Respondent-mother's observation that several of the trial court's findings of fact amount to conclusions of law, specifically those portions of Findings 65, 66, 68, 69, and 71 stating that Carl meets the legal standards for abuse, neglect, and dependency under N.C. Gen. Stat. § 7B-101(1), (9) and (15) (2013).

Typically, however, a trial court's misclassification of conclusions of law as findings of fact "is merely an inconvenience" to the reviewing court. *State ex rel. Utilities Comm'n v. Eddleman*, 320 N.C. 344, 352, 358 S.E.2d 339, 346 (1987). If a contested finding is more properly characterized as a conclusion of law, we will apply the appropriate standard of review and determine whether the remaining facts found by the court support the conclusion. *See In re R.A.H.*, 182 N.C. App. 52, 60, 641 S.E.2d 404, 409 (2007).

Here, Respondent-mother claims that Finding of Fact 69 is not supported by the evidence because the trial court refers to a "failure of the parents to pursue recommended services to alleviate safety concerns." Finding 69 reads as follows:

> That the juvenile [Carl]'s physical mental and emotional status is substantially at risk of future neglect based on the historical facts of cases involving [Martha] and [Beth] and the failure of the parents to pursue recommended services to alleviate safety concerns; there is a substantial likelihood of future neglect.

Respondent-mother does not contest that Respondents failed to comply with the services recommended to alleviate the safety concerns for Martha and Beth. But she contends that there is no evidence that respondents "have failed to pursue recommended services in *this* case . . . ." (Emphasis added). We reject this argument because the trial court need not limit its findings to services recommended to address the safety of Carl. Respondents' failure to address safety concerns for Martha and Beth while those children lived with Respondents led, at least in part, to the

- 7 -

termination of their parental rights to those children. Accordingly, Finding 69 is relevant to determining whether there is a likelihood of future neglect with respect to Carl.

Respondent-mother next challenges the portion of Finding of Fact 68 stating that Carl was "living in a home where another juvenile, namely [Martha] had been Abused and where [Martha] and [Beth] had been Neglected." At the beginning of Carl's adjudicatory hearing on 8 January 2015, the trial court admitted into evidence certified copies of the adjudicatory, permanency planning, and termination orders entered in that earlier proceeding. Although Respondent-father challenged the relevance of the permanency planning order,[2] Respondents did not object to the orders addressing Martha and Beth's original adjudications and the subsequent termination of Respondents' parental rights. We thus find ample competent evidence to support the contested Finding.

## III. Challenged Conclusions of Law

In challenging the trial court's conclusions that Carl is abused, neglected, and dependent, respondents raise the general complaint that the court based these

---

[2] Respondent-father challenged the relevance of the order due to the lesser standard of proof applicable to permanency planning hearings and the "lapse of time" since the hearing. The trial court overruled his objections, concluding that "[t]he issue as to the standard of proof goes to the weight of the evidence not its admissibility." While respondent-mother does not expressly raise the issue as a basis for her appeal, it is well established that the trial court "is presumed to have disregarded any incompetent evidence" when taking judicial notice of findings of fact in its prior orders. *In re W.L.M.*, 181 N.C. App. 518, 523, 640 S.E.2d 439, 442 (2007).

adjudications largely upon findings made in its previous orders relating to Martha and Beth. We note, however, that the court did not rely wholly on its prior orders but received live testimony from multiple witnesses, including Respondents. *Cf. In re A.M.*, 192 N.C. App. 538, 542, 665 S.E.2d 534, 536 (2008) (concluding that "the trial court failed to hold a proper, independent termination hearing" where DSS called no witnesses and the court relied "solely on the written reports of DSS and the guardian ad litem, prior court orders, and oral arguments by the attorneys"). The mere fact that the court made certain findings about respondents' prior conduct based on its previous orders does not render its adjudications invalid.

### A.    Adjudication of Neglect

Respondents both argue that the trial court's findings do not support its conclusion that Carl was a neglected juvenile. Respondent-father claims that the trial court relied entirely upon "evidence stemming from the prior cases" involving Martha and Beth and that "there was no other evidence that Carl was neglected at the time DSS filed its petition." While Respondent-mother concedes that "the prior orders contain findings and conclusions which are relevant to the issues of whether Carl is an abused, neglected and dependent juvenile," she contends that these prior proceedings "are by no means dispositive."

Our juvenile code defines a neglected juvenile, *inter alia*, as one "who does not receive proper care, supervision, or discipline from the juvenile's parent . . . or who

lives in an environment injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15). The juvenile must experience "some type of physical, mental, or emotional impairment or a substantial risk of such impairment" in order to be adjudicated neglected. *In re C.M.*, 183 N.C. App. 207, 210, 644 S.E.2d 588, 592 (2007). However, "[i]n determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile . . . lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." N.C. Gen. Stat. § 7B-101(15). The statute thus "allows the trial court to consider the substantial risk of impairment to the remaining children when one child in a home has been subjected to abuse or neglect." *In re McLean*, 135 N.C. App. 387, 394, 521 S.E.2d 121, 126 (1999). The trial court has discretion in determining the weight to be given evidence of prior neglect of another child in the home. *Id.*, 135 N.C. App. at 395, 521 S.E.2d at 126.

The trial court concluded that Carl was a neglected juvenile because, "at the time of the filing of the petition," he "did not or would not receive proper care, supervision, or discipline from [his] parent or caregiver and lives or would live in an environment injurious to his welfare . . . ." The court went on to weigh the significance of Respondents' prior abuse and neglect of Martha and Beth, a proper exercise of its discretion in applying N.C. Gen. Stat. § 7B-101(15):

> 13. That NCGS 7B-101(15) does not mandate a conclusion of neglect, but allows discretion in determining the weight to be given to such evidence, and based upon the evidence presented, the Court concludes that the juvenile is a

> neglected juvenile and there is a substantial risk of future abuse or neglect based on the historical facts of the case.
>
> 14. That based upon the failures of the parents to access services and follow through with treatment recommendations or work their respective case plans there is a high probability of repeat abuse and neglect of the juvenile [Carl].

We hold that the trial court's findings are sufficient to support its conclusion that Carl was neglected within the meaning of N.C. Gen. Stat. § 7B-101(15). The findings recount Respondent-father's sexual abuse of Martha; the girls' exposure to Respondents' recurrent domestic violence, including violence by Respondent-mother toward Beth; and Respondents' denial of an education to the girls through a "sham" home school. The court made additional findings regarding Respondents' refusal of services, including Respondent-mother's failure to obtain a psychological assessment and Respondent-father's failures to obtain a Sex Offender Specific Evaluation or to obtain treatment for domestic violence and his diagnoses of post-traumatic stress disorder, depression, and "delusional disorder, persecutory type." The findings further note Respondents' attempts to deceive the trial court through the submission of fraudulent documents and false testimony, as well as Respondent-mother's concealment of Carl's existence from DSS and her placement of infant Carl in Respondent-father's care when she was jailed for contempt in July 2014. These findings support the trial court's conclusion of neglect.

**B.    Adjudication of Abuse**

Respondents next contest Carl's adjudication as an abused juvenile. Claiming the trial court relied "only on [his] prior alleged sexual misconduct" with Martha, Respondent-father argues that the court heard no evidence and made no findings tending to show "that Carl was at a substantial risk of also suffering abuse" or that Respondent-father "was at risk of sexually assaulting a boy instead of a girl." He also points to the court's own finding "that there was no evidence showing that Carl had been mentally, physically, or emotionally abused by [Respondents]." Respondent-mother echoes these arguments and cites the testimony of DSS social worker supervisor Beth Riley that Carl "looked fine" and did not show any signs of mistreatment when he was taken into custody in July 2014. The GAL responds that Respondent-mother's act of leaving Carl "in the sole care of [Respondent-father] . . . who had sexually abused Martha supports the trial court's conclusion that there was a substantial risk of serious injury to Carl."

The trial court based its adjudication of abuse on N.C. Gen. Stat. § 7B-101(1)(b), under which a juvenile is deemed to be "abused" if his parent or caretaker "[c]reates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means[.]" In support of its conclusion that Respondents "created or allowed to be created a substantial risk of serious physical injury to [Carl] by other than accidental means," the court found as follows:

> 60. . . . [Respondent-father] previously sexually assaulted [Martha] on more than one occasion; there were multiple acts of domestic violence between the respondent [m]other and respondent father in the presence of [Martha] and [Beth]; that the respondent mother threw items at [Beth] and that the mother left her three (3) month old child [Carl] alone and in the sole care of [respondent-father] who had been identified as a sex offender and had not complied with the court order to secure a Sex Offender Specific Evaluation and treatment.

The court acknowledged the lack of "actual evidence of physical or mental or emotional abuse to [Carl] at this time," but nonetheless found "that his physical, mental and emotional condition is endangered to becoming impaired."

Unlike the statutory definition of "neglected juvenile," the definition of "abused juvenile" in N.C. Gen. Stat. § 7B-101(1) does not expressly state that the fact that the juvenile lives in the home where another juvenile has been subjected to abuse by an adult who regularly lives in the home is relevant to the analysis. As a result, the past abuse of another juvenile living in the home can support an adjudication of abuse only if there is evidence connecting that past abuse with a likelihood of future abuse to the juvenile in question. Here, the record does not contain sufficient evidence to suggest that Respondent-father's past sexual abuse of Martha created a substantial risk that Respondent-father would inflict "serious physical injury" on Carl. Accordingly, we reverse the adjudication of abuse.

## C.    Adjudication of Dependency

Respondents also challenge the sufficiency of the trial court's factual findings in support of its conclusion that Carl is a dependent juvenile as defined by N.C. Gen. Stat. § 7B-101(9) (2013). A "dependent juvenile" is defined, in pertinent part, as one whose "parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9). In order to sustain an adjudication of dependency, "the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005).

Respondent-father argues that the trial court "made no ultimate finding explaining why [Respondents] would be incapable of providing care and supervision" for Carl. Therefore, he contends, "the findings of fact in this case fail to support a conclusion that Carl was dependent." Respondent-mother likewise asserts that, "other than a conclusory statement that the parents were incapable of caring for Carl, there w[ere] no specific findings to support that conclusion." Neither Respondent contests the sufficiency of the court's findings regarding the second prong of dependency, *i.e.*, their lack of an alternative child care arrangement for Carl.

We reject Respondents' arguments and hold that the trial court's findings support its conclusion of dependency. Those findings recount Respondents' history

of domestic violence and neglectful and abusive conduct toward Carl's sisters which resulted in the termination of their parental rights as to the girls in May 2014. The findings further reflect Respondents' refusal to address the issues that led to Martha and Beth's removal from their home, as well as their repeated attempts to deceive DSS and the court and their deliberate concealment of Carl's birth in April 2014. At the time DSS filed the juvenile petition in this case, Respondent-mother was in jail and had yet to obtain a court-ordered psychological evaluation. Respondent-father had failed to pursue recommended treatment for domestic violence and his serious mental health diagnoses. Moreover, having sexually abused his five-year-old daughter, Respondent-father had refused to obtain a sex offender evaluation to assess his risk of recidivating with other children. The trial court's findings also note that Carl "exhibit[ed] some developmental delays with respect to mobility, swallowing and hearing" at the time he was taken into DSS custody.

We hold that these findings are sufficient to support the court's conclusion that respondents "are unable to appropriately supervise" Carl for purposes of N.C. Gen. Stat. § 7B-101(9). *See In re T.B.*, 203 N.C. App. 497, 506, 692 S.E.2d 182, 188 (2010) (developmental delays can support conclusion that parent is unable to care for a child); *see also In re P.M.*, 169 N.C. App. at 428, 610 S.E.2d at 406 ("a failure to comply with court-ordered protection plans may establish an inability to care for or supervise a child").

## Conclusion

For the reasons discussed above, we reverse the trial court's adjudication that Carl is an abused juvenile under N.C. Gen. Stat. 7B-101(1)(b). In all other respects, we affirm the trial court's order.

AFFIRMED IN PART; REVERSED IN PART.

Judges ELMORE and DILLON concur.

Report per Rule 30(e).