692 S.E.2d 182 (2010)
In the Matter of T.B., C.P., and I.P.
No. COA09-1401.
Court of Appeals of North Carolina.
April 20, 2010.
*183 Wyrick Robbins Yates & Ponton LLP, by Tobias S. Hampson, Raleigh, for respondent-appellant mother.
Pamela Newell Williams, Raleigh, for guardian ad litem.
ERVIN, Judge.
Respondent-Mother Evelyn P. appeals from an order adjudicating T.B. (Tim), C.P. ("Carl"), and I.P. ("Ida")[1] as dependent juveniles. On appeal, Respondent-Mother challenges the trial court's decision to adjudicate Tim, Carl, and Ida as dependent juveniles; the trial court's failure to decide whether Tim, Carl, and Ida were neglected juveniles; and the trial court's failure to establish a visitation plan for Respondent-Mother at the dispositional phase of this proceeding. After *184 careful consideration of the arguments advanced in Respondent-Mother's brief in light of the record and the applicable law, we affirm the trial court's order in part and reverse and remand this case for further proceedings in part.
On 1 June 2009, the Chatham County Department of Social Services filed juvenile petitions alleging that Tim, Carl, and Ida were neglected and dependent juveniles. The petitions were filed following an altercation at school between Tim and another student which occurred on 28 May 2009. According to DSS, Tim
became angry with another student and started a fight. When school personnel intervened, [Tim] attempted to stab a student and teacher; fought with law enforcement and had to be physically restrained. [Tim] was taken to the ER where it was determined that non-secure custody should be requested.
DSS stated that Tim had been diagnosed with: (1) attention deficit disorder; (2) mood disorder; (3) oppositional defiant disorder; and (4) a learning disorder. DSS further alleged that Tim was an exceptional child and had an Individualized Education Program (IEP) at school. DSS asserted that Respondent-Mother had "not attended to [Tim's] special needs and may have inappropriately disciplined him for his aberrant behavior." DSS further claimed that Tim's siblings, Carl and Ida, were also exceptional children and each had an IEP at school. DSS stated that "[t]hey have missed several days from school and have been observed at home, unsupervised, for long periods of time." DSS alleged that Respondent-Mother had also failed to attend to Carl's and Ida's special needs.
According to DSS, Respondent-Mother had been diagnosed with paranoid schizophrenia and was not taking her medication as prescribed. DSS alleged that "Respondent[-M]other claims that everyone is out to get her and that she has hired an attorney to sue the school, DSS and others who have discriminated against her. She claims to have filed complaints with the NAACP." DSS further stated that Respondent-Mother had recently relocated the family to Chatham County, had moved the family "numerous times," and that similar "circumstances" had occurred in other jurisdictions. Tim, Carl, and Ida were removed from Respondent-Mother's care based upon the issuance of non-secure custody order.
An adjudicatory and dispositional hearing was held before the trial court on 23 July 2009. On 21 August 2009, the trial court entered a written adjudicatory and dispositional order, nunc pro tunc to 23 July 2009 (the 21 August 2009 order). The trial court found that Tim, Carl, and Ida were dependent juveniles, but did not rule on the allegation of neglect, stating that the neglect allegation should remain pending before the court. At the dispositional phase of the proceeding, the trial court awarded custody of Tim, Carl, and Ida to DSS based upon a conclusion that it was not in their best interests to return home. On 25 August 2009, Respondent-Mother noted an appeal to this Court from the trial court's order.
On appeal, Respondent-Mother first contends that the trial court erred by concluding that Tim, Carl, and Ida were dependent juveniles. A "dependent juvenile" is:
A juvenile in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement.
N.C. Gen.Stat. § 7B-101(9). "In determining whether a juvenile is dependent, `the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements.'" In re B.M., 183 N.C.App. 84, 90, 643 S.E.2d 644, 648 (2007) (quoting In re P.M., 169 N.C.App. 423, 427, 610 S.E.2d 403, 406 (2005)). "Findings of fact addressing both prongs must be made before a juvenile may be adjudicated as dependent, and the court's failure to make these findings will result in reversal of the court." Id. (citing In re K.D., 178 N.C.App. 322, 328-29, 631 S.E.2d 150, 155 (2006)). In an abuse, neglect or dependency case, review is limited to the issue of whether the conclusion *185 is supported by adequate findings of fact. In re Helms, 127 N.C.App. 505, 511, 491 S.E.2d 672, 676 (1997).
In this case, the trial court made the following findings of fact in support of its conclusion that Tim, Carl, and Ida were "dependent juveniles":
5. A neglect report was made to [DSS] on April 23, 2009. The report indicated that the children lived in an environment injurious to their welfare and that they were not being properly supervised. The report came on the heels of [Tim's] failure to attend school.
6. The report was accepted and an investigation undertaken. During the course of the investigation, [DSS] became aware that the family has moved many times both from state to state and county to county; that the children have been moved from school to school with no stability in their lives; that all three children are special needs children and that Respondent[-M]other has mental health problems.

7. Respondent[-M]other has a significant other, Shirley King, who has been with Respondent[-M]other and the children for twelve or thirteen years and who [has] acted as a parent to the children. She is also the payee for Respondent[-M]other's Social Security Disability Income check.
* * *
9. Respondent[-M]other reports a history of abuse by . . ., [the] father of the children. She reports that he is violent, follows her when she moves to a new place and that she fears for her safety. She does not know [the father's] whereabouts, his social security number, or his birth date. She believes [that] there are outstanding warrants for his arrest in Maryland. Respondent[-M]other claims that her relocation from place to place has been, in part, to run from [the father] and to keep her children safe.
10. During the course of the investigation of this case, non-secure custody of [Tim] was granted to [DSS], after he was involuntarily committed for psychiatric care. A juvenile petition was filed on all three children. [Tim] was committed and non-secure custody was granted after he assaulted school staff, a student and police officers and caused property damage at school. . . . Additionally, [DSS] had reason to believe that Respondent[-M]other and Ms. King planned to flee the area in order to avoid [DSS] involvement.
11. When [Tim's] case came on to be heard for [a]djudication on June 11, 2009, the Judge presiding became concerned for the safety of [Ida] and [Carl] and awarded non-secure custody of [Ida] and [Carl] to [DSS,] thereby continuing the [a]djudication hearing until July 23, 2009.
12. On her own initiative, Respondent[-M]other participated in a psychological evaluation completed by Dr. Craig Smith, which is summarized in a written report submitted to the Court as evidence at [a]djudication.. . .
13. . . . . The report indicates that Respondent[-M]other has suicidal ideation and tendencies, that she is in a state of chronic and substantial stimulus overload, and that she suffers from Chronic Post Traumatic Stress Disorder, Major Depressive Disorder, and Dependent Personality Disorder. Respondent[-M]other's serious psychological problems impair Respondent[-M]other's ability to parent.
14. Respondent[-M]other and Ms. King love the children and appear to have made attempts to do what they thought was best for them. However, the children have major academic, psychological and behavioral problems and neither Respondent[-M]other nor Ms. King can meet the substantial needs of the children.

15. [Tim] is currently in Dorothea Dix hospital. He [is] of low weight and height for his age and is diagnosed with ADHD (Attention Deficit Hyperactivity Disorder), ODD (Oppositional Defiant Disorder), Mood Disorder, and Learning Disorder. He feels safe in the hospital and is not ready to be discharged.
16. [Ida] is of low weight and height for her age. While attending school, she was in the Exceptional Children's Program and had an IEP. She is in a licensed foster home and is adjusting well to this out of home placement. Her pediatrician is concerned *186 about her low weight and she was recently diagnosed to [wear] glasses.
17. [Carl] is of low weight and height for his age and is in the 13th percentile when compared to other children his age. While attending school, he was in the Exceptional Children's program. He is diagnosed with ADHD, ODD, and a Learning Disorder. [Carl] is adjusting well to his foster home.
* * * *
23. Custody with a relative is not an option as no relative has been identified as a potential placement option.
(emphasis added). With the exception of Finding of Fact No. 14, Respondent-Mother does not contest the sufficiency of the evidence to support these findings on appeal.[2] Given the absence of any such challenge, these findings of fact are deemed to be supported by sufficient evidence and are binding on us for purposes of appellate review. N.C.R.App. P. 28(b)(6); see also In re P.M., 169 N.C.App. at 424, 610 S.E.2d at 404-05 (concluding that respondent had abandoned factual assignments of error when she "failed to specifically argue in her brief that they were unsupported by evidence"). As a result, we will evaluate the validity of the trial court's determination that Tim, Carl and Ida were dependent juveniles as defined in N.C. Gen.Stat. § 7B-101(9) based on the information contained in these findings of fact.
First, Respondent-Mother argues, in reliance on In re Scott, 95 N.C.App. 760, 383 S.E.2d 690, disc. review denied, 325 N.C. 708, 388 S.E.2d 459 (1989), that "nothing in Dr. Smith's reportor Dr. Fullwood's reportin any way suggests that [Respondent-Mother's] mental health in any way impairs [her] ability to parent." As we have already noted, however, the trial court found that Dr. Smith noted that Respondent-Mother has "suicidal ideation and tendencies, that she is in a chronic state of stimulus overload," "that she suffers from Chronic Post Traumatic Stress Disorder, Major Personality Disorder, Major Depressive Disorder, and Dependent Personality Disorder" and that these "serious psychological problems impair Respondent[-M]other's ability to parent." In addition, Dr. Smith's report described Respondent-Mother as "an individual struggling with serious psychological difficulties and in severe emotional distress, all of which is exacerbated by the stress of having her children currently separated from her." A careful examination of the information contained in Dr. Scott's report provides ample basis for the trial court's inference that the mental difficulties under which Respondent-Mother labored impaired her "ability to parent." As a result, unlike the situation in Scott, the trial court found, with ample record support, that Respondent-Mother suffered from significant psychological conditions, the existence of which she does not dispute on appeal, and that these conditions impair her ability to parent Tim, Carl, and Ida.
Secondly, Respondent-Mother contends that the trial court did not delineate the evidence upon which it relied in making Finding of Fact No. 14, which addresses the ability of Respondent-Mother and Ms. King *187 to meet the children's needs.[3] Respondent-Mother has not cited any authority indicating that such explanatory findings are legally necessary, and we know of none. In addition, we have reviewed the record and found that it contains sufficient evidence to support the statements made in Finding of Fact No. 14 quoted above. The DSS court report, which was admitted into evidence, states that:
When a family moves as frequently as [Respondent-Mother] and the children have, it is extremely difficult to ensure that the children's medical and mental health needs are being met. . . .
Historically, the children have been to so many different medical providers that no, one, particular medical provider has a complete/consistent history of the children's needs. There are many questions in reference to not only the psychological impact it has on the children with multiple moves, but also with regards to the children developing a strong sense of self; learning how to trust adults; learning how to establish and form strong, secure bonds with people. The children live in an environment where at any time they may be packed up and moved to yet another place to "start all over." When the moves have taken place, the children lose many of their belongings; the family literally has to start over, and friends, if they have made any, are not there anymore. All three of the children talk about how sad it makes them to move all the time; how hard it is on them and that they do not want to move anymore. The children have all developed behaviors indicative of children who have been traumatized. [Carl] and [Tim], in particular, are exhibiting extreme forms of violence, aggression, and acting out and [DSS] is not convinced, as well as different providers in the past, that these behaviors are solely manifested genetically or a result of the multiple disruptions in the children's lives. [Ida] is beginning to develop concerning behaviors as well in reference to curling up in a ball in a corner and detaching herself from others and as one of her teachers reported, becoming non-functional.
[Tim] remains at the hospital in order to get a full psychological assessment of him and he is now becoming aggressive and they are having to try medication in [] order to address the behavior. Notably [Tim] has told [DSS] that he does not want to go back home. Due to [Tim]'s significant mental health issues, it is unclear as to what school [Tim] will be enrolled in following this hospitalization. The school will need to ensure both the safety of [Tim] as well as the other students.
[Respondent-Mother] and Ms. King appear to love the children. It is believed that they are doing the best they can to provide for them and that the decisions they make are what they think is what is in the best interests of the children. [DSS] is unsure as to the extent of [Respondent-Mother's] mental illness and how it does impact her in making sound decisions for the children. [Respondent-Mother] seems to distrust most service providers and people who want to help the family as evidenced by [Respondent-Mother's] insistence that her rights are being violated by the school system, law enforcement, and Social Services.
As a result, the record contains substantial evidence tending to support the information contained in Finding of Fact No. 14.
Finally, in reliance on In re P.M., 169 N.C.App. at 428, 610 S.E.2d at 406, Respondent-Mother contends that "the trial court found without basis [that Ms.] King was unable to care for the children." A careful *188 review of the trial court's findings of fact indicates that the trial court had ample basis for making this determination. The trial court's unchallenged findings indicate that the children had been living with Respondent-Mother and Ms. King, who had been functioning in a parental role, for twelve or thirteen years. Although the trial court found that Respondent-Mother and Ms. King "love the children and appear to have made attempts to do what they thought was best for them," "the children have major academic, psychological and behavioral problems. . . ." In addition, the trial court found that Tim is "of low weight and height for his age" and has been "diagnosed with ADHD (Attention Deficit Hyperactivity Disorder), ODD (Oppositional Defiant Disorder), Mood Disorder, and Learning Disorder;" that Ida "is of low weight and height for her age" and that she "was in the Exceptional Children's Program and had an IEP;" and that Carl "is of low weight and height for his age," "is in the 13th percentile when compared to other children his age," "was in the Exceptional Children's program," and has been "diagnosed with ADHD, ODD and a Learning Disorder." When considered in conjunction, these findings demonstrate that, despite having had ample opportunity to parent the children in conjunction with Respondent-Mother, Ms. King has not demonstrated the ability to care for the children in such a manner as to produce successful outcomes. Instead, while under the care of Respondent-Mother and Ms. King, the children have all had low weight and height and have had "major academic, psychological and behavioral problems." This evidence, which is embodied in undisputed findings of fact, is more than sufficient to support the trial court's finding that "neither Respondent[-M]other nor Ms. King can meet the substantial needs of the children."
Taken in their entirety, the factual findings quoted above demonstrate that Respondent-Mother had significant mental health issues, the children have special needs, and that neither Respondent-Mother nor Ms. King have demonstrated the ability to meet the children's special needs or to otherwise care for them in such a way as to produce successful outcomes. Furthermore, the trial court's findings suggest that the children suffer as a result of the family's multiple relocations; however, Respondent-Mother and Ms. King apparently thought about flight at the time that DSS involvement began despite the adverse impact that such an action would have on the children. In addition, there is no evidence that Respondent-Mother ever suggested appropriate alternate placements for the children. See In re D.J.D., 171 N.C.App. 230, 239, 615 S.E.2d 26, 32 (2005). As a result, based on the findings of fact quoted above, we hold that the trial court properly concluded that Tim, Carl, and Ida were dependent juveniles.
Secondly, Respondent-Mother argues that the trial court erred by leaving the allegation of neglect undecided and by explicitly stating that this allegation might be decided at some point in the future. According to Respondent-Mother, since the trial court did not adjudicate the juveniles as neglected, it should have dismissed the neglect allegation since simply leaving that allegation pending was not a permissible statutory option. We agree with Respondent-Mother that the relevant statutory provisions do not contemplate an action such as that taken by the trial court in this instance.
"The adjudicatory hearing shall be a judicial process designed to adjudicate the existence or nonexistence of any of the conditions alleged in a petition. In the adjudicatory hearing, the court shall protect the rights of the juvenile and the juvenile's parent to assure due process of law." N.C. Gen.Stat. § 7B-802.
If the court finds that the allegations in the petition have been proven by clear and convincing evidence, the court shall so state. If the court finds that the allegations have not been proven, the court shall dismiss the petition with prejudice, and if the juvenile is in nonsecure custody, the juvenile shall be released to the parent, guardian, custodian, or caretaker.
N.C. Gen.Stat. § 7B-807(a). As a result, when a trial court is required to adjudicate allegations of abuse, neglect, or dependency, it must either adjudicate the juvenile as abused, neglected, or dependent if the allegations *189 are proven by clear and convincing evidence or dismiss the allegation if the necessary evidentiary showing is not made. Simply put, nothing in N.C. Gen.Stat. § 7B-807(a) allows a trial court to hold a ruling on an allegation in a petition alleging abuse, neglect, or dependency in abeyance, as the trial court attempted to do in this instance.
According to the Guardian ad Litem, the trial court's ruling was, in actuality, a permissible continuance. In essence, the Guardian ad Litem argues that the trial court wished to receive further information regarding Respondent-Mother's psychological condition prior to ruling on the neglect allegation. Acceptance of the Guardian ad Litem's argument would tend to suggest that the trial court intended to rule on the neglect allegation at a later time. Nothing in the record, however, provides any support for the Guardian ad Litem's contention. The record does not indicate that the trial court scheduled any further adjudicatory hearings for the purpose of considering the neglect allegation. Furthermore, while the trial court did order Respondent-Mother to execute a release of her mental health and medical records and to undergo a second psychological evaluation with a psychologist of her choosing, there is nothing in the record to demonstrate that the trial court's attempt to obtain this additional information bore any relation to future proceedings intended to address the as-yet-undecided neglect allegation. Instead, the record suggests that the trial court sought this additional information for the purpose of assisting in the development of a dispositional plan that would further the best interests of the juveniles. As a result, we are not persuaded by the Guardian ad Litem's contention that the trial court's decision to refrain from deciding the issues raised by the neglect allegation was tantamount to a continuance and remand this proceeding for the entry of additional findings and conclusions based on the existing record adjudicating the neglect allegation.[4]
Finally, Respondent-Mother argues that the trial court erred by failing to adopt a definitive visitation plan as part of its dispositional decision and leaving Respondent-Mother's visitation with the children to the discretion of DSS instead. At a 18 June 2009 hearing, the trial court ordered that "Respondent[-M]other's visitation, if any, with the juveniles is in the discretion of the treatment team." In the 21 August 2009 order, the trial court noted that "visits between Respondent[-M]other, Ms. King and the children are going well and all are adhering to the rules for visitation as established by [DSS]." The only other reference to visitation in the 21 August 2009 order is the statement that "[a]ll contact between Respondent[-M]other, Ms. King, and the juveniles shall remain supervised." Respondent-Mother contends that the trial court erred by failing to include the outline of a visitation plan in its order, thereby effectively leaving her visitation with Tim, Carl, and Ida in the discretion of DSS. See N.C. Gen.Stat. § 7B-905(c); In re E.C., 174 N.C.App. 517, 621 S.E.2d 647 (2005). We agree.
N.C. Gen.Stat. § 7B-905(c) provides that any dispositional order which leaves the minor child in a placement "outside the home shall provide for appropriate visitation as may be in the best interests of the juvenile and consistent with the juvenile's health and safety." This Court has held that "[a]n appropriate visitation plan" that complies with N.C. Gen.Stat. § 7B-905(c) "must provide for a minimum outline of visitation, such as the time, place, and conditions under which visitation may be exercised." In re E.C., 174 N.C.App. at 523, 621 S.E.2d at 652 (emphasis added). Furthermore,
even if the trial court determines that visitation would be inappropriate in a particular case or that a parent has forfeited his or her right to visitation, it must still address that issue in its dispositional order *190 and either adopt a visitation plan or specifically determine that such a plan would be inappropriate in light of the specific facts under consideration.
In re K.C., ___ N.C.App. ___, ___, 681 S.E.2d 559, 563 (2009).
The provisions of the trial court's dispositional order concerning visitation are, at an minimum, unclear. At best, the trial court's order continued in effect a prior plan which left the scope and extent of visitation to "the discretion of the treatment team." At worst, the trial court simply failed to address the issue of visitation in its 21 August order. Under either interpretation, the visitation provisions of the 21 August order failed to comply with the requirements of N.C. Gen. Stat. § 7B-905(c) by failing to address "the time, place, and conditions under which visitation may be exercised." In re E.C., 174 N.C.App. at 523, 621 S.E.2d at 652. As a result, we remand this case to the trial court for the entry of additional findings and conclusions relating to the issue of an appropriate visitation plan.
Thus, for the reasons set forth above, we conclude that the trial court did not err by finding Tim, Carl, and Ida to be "dependent juveniles." However, we also conclude that the trial court erred by failing to decide the issue of whether Tim, Carl, and Ida were "neglected juveniles" and by failing to make appropriate findings and conclusions relating to the issue of an appropriate visitation plan. As a result, the trial court's order should be, and hereby is, affirmed in part and reversed and remanded for further proceedings not inconsistent with this proceeding in part.
Affirmed in part; reversed and remanded in part.
Judges McGEE and ROBERT C. HUNTER concur.
NOTES
[1] "Tim," "Carl," and "Ida" are pseudonyms that will be used throughout the remainder of this opinion for ease of reading and to protect the privacy of the juveniles.
[2] Respondent-Mother has attacked the sufficiency of the evidence to support Finding of Fact No. 4 and some components of Finding of Fact No. 13 that are not quoted in the body of the opinion in her brief. More particularly, Respondent-Mother contends that DSS had a "preconceived narrative" in this case that Respondent-Mother "suffered from paranoid schizophrenia and was delusional;" that the trial court erred by stating in Finding of Fact No. 4 that "Dr. Fullwood's notes indicated that Respondent[-M]other was diagnosed for schizophrenia," that "it is the basis upon which she received disability," and that Dr. Fullwood's "notes contradict Respondent[-M]other's testimony;" and that the trial court erred by stating in Finding of Fact No. 13 that Respondent-Mother "appears to have serious psychological problems, to be in denial of having psychological problems and is therefore not a good candidate for counseling or psychotherapy" and to "have `limited resources for dealing with the demands of her life situation.'" However, since we have not relied on those portions of Finding of Fact Nos. 4 and 13 that Respondent-Mother has challenged in examining the lawfulness of the trial court's finding that Tim, Carl, and Ida are dependent juveniles, we need not examine the validity of Respondent-Mother's challenges to these portions of the trial court's findings in detail in this opinion. In re T.M., 180 N.C.App. 539, 547, 638 S.E.2d 236, 240 (2006) (stating that "[w]hen, however, other findings of fact support an adjudication of neglect, erroneous findings unnecessary to the determination do not constitute reversible error") (citing In re Beck, 109 N.C.App. 539, 548, 428 S.E.2d 232, 238 (1993)).
[3] In addition, in reliance on In re J.A.G., 172 N.C.App. 708, 716, 617 S.E.2d 325, 331-332 (2005), Respondent-Mother argues that the trial court's failure to adjudicate Tim, Carl, and Ida to be neglected juveniles precludes the trial court from adjudicating them to be dependent juveniles. We do not, however, find J.A.G. to be controlling in this instance, since the J.A.G. Court found the record insufficient to support a determination that "respondent had not appropriately cared for" the juvenile or that "respondent was not willing to investigate the needs of J.A.G. in a safe environment." Id. Since the trial court did not expressly or impliedly reject DSS' allegation that Tim, Carl, and Ida were neglected juveniles and since the trial court expressly found that they were dependent juveniles, we do not believe that the principle enunciated in J.A.G. has any application in this proceeding.
[4] Although Respondent-Mother argues, in reliance on In re S.R.G., ___ N.C.App. ___, ___, 684 S.E.2d 902, 905 (2009), disc. review denied and cert. denied, 363 N.C. 804, 691 S.E.2d 19 (2010), that "the consequence of" the trial court's failure to find the children to be "neglected juveniles" "is the nonexistence of the other. . . ground[] alleged by DSS," we do not believe that the logic upon which Respondent-Mother relies is applicable in this instance given that the trial court, instead of simply failing to find the neglect ground without comment, expressly declined to address it and stated that "[t]he issue of neglect shall remain pending before this court."