IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1133

Filed: 15 December 2020

Sampson County, No. 18 JA 117

IN THE MATTER OF: Q.M., Jr.

Appeal by Respondent-Mother from Orders entered 24 June 2019, by Judge Leonard W. Thagard and 19 September 2019, by Judge Timothy Smith in Sampson County District Court. Heard in the Court of Appeals 3 November 2020.

> *Elizabeth Myrick Boone and Warrick, Bradshaw & Lockamy, PA, by Frank L. Bradshaw, for petitioner-appellee Sampson County Department of Social Services.*
>
> *Surratt Thompson & Ceberio PLLC, by Christopher M. Watford, for respondent-appellant mother.*
>
> *Matthew D. Wunsche for guardian ad litem.*

HAMPSON, Judge.

### Factual and Procedural Background

Respondent-Mother appeals from Orders adjudicating her son Q.M., Jr. (Quan)[1] a dependent juvenile under N.C. Gen. Stat. §7B-101 (Adjudication Order) and maintaining the child in the custody of Sampson County Department of Social Services (DSS) (Disposition Order). The Record reflects the following:

---

[1] Quan is the stipulated pseudonym used to protect the identity of the juvenile under Rule 42. N.C.R. App. P. 42 (2020).

On 25 October 2018, Respondent-Mother gave birth to Quan. At the time of Quan's birth, Respondent-Mother was a ward of the Cumberland County Department of Social Services. Respondent-Mother had a history of mental health issues and had been appointed a Guardian ad litem pursuant to Rule 17 of the North Carolina Rules of Civil Procedure.

Four days after Quan's birth, on 29 October 2018, DSS filed a petition alleging Quan was a dependent juvenile. The Petition identified Quan's putative father (Respondent-Father),[2] who had informed DSS he was Quan's father and was willing to take a paternity test. The same day, DSS obtained an Order for Nonsecure Custody and placed Quan into foster care. On or about 9 November 2018, the trial court ordered Respondent-Father to submit to paternity testing, which he completed on 17 January 2019, and which was transmitted to the trial court on 28 January 2019. On 14 February 2019, the trial court held a hearing to establish paternity; however, the trial court did not enter a formal written Judgment of Paternity adjudicating Respondent-Father as Quan's father until 3 June 2019.

In the meantime, DSS maintained nonsecure custody of Quan and he remained with his foster family. The trial court held Quan's adjudication hearing on 23 May 2019. Respondent-Mother was not present at the hearing but was represented by

---

[2] The Record reflects Respondent-Father was present and represented by counsel at the adjudication hearing; however, Respondent-Father does not appeal the trial court's Adjudication Order or subsequent Disposition Order. [**R p. 49**].

counsel and her Guardian ad litem. On 24 June 2019, the trial court entered its

written Adjudication Order. In the Adjudication Order, the trial court found:

> 1. That pursuant to N.C. Gen. Stat. § 7B-801, this matter came on for adjudication upon a Petition filed by [DSS] on February 14, 2019.
>
>    . . . .
>
> 3. That the Respondent Mother was previously appointed [a] Rule 17 Guardia[n] ad Litem.
>
> 4. That the father of the Juvenile, [Respondent-Father], was personally served with the Petition and Summons on February 14, 2019.
>
>    . . . .
>
> 6. That [DSS] received a report of potential abuse, neglect, and/or dependency on October 25, 2018.
>
> 7. That the Respondent Mother was previously adjudicated to be incompetent and is currently a ward of the Cumberland County Department of Social Services.
>
>    . . . .
>
> 10. That the Respondent Mother refused to work a service agreement with [DSS] with respect to the other juvenile.
>
> 11. That due to her behaviors and the safety of the other Juvenile, the mother's visitations with respect to the other child were terminated.
>
> 12. That there were no additional family members that were available for placement of the juvenile at the time of the filing of the petition and the Respondent Father was merely a putative father at the time.

13. That the Juvenile is a dependent juvenile pursuant to N.C. Gen. Stat. §7B-101(9) in that: (i) the Juvenile needs assistance or placement because the Juvenile has no parent, guardian, or custodian responsible for the Juvenile's care or supervision; and (ii) the Juvenile's parent, guardian or custodian is unable to provide for the Juvenile's care or supervision and lacks an appropriate alternative child care arrangement.

The trial court ultimately adjudicated Quan as a dependent juvenile under N.C. Gen. Stat. § 7B-101(9).

On 1 August 2019, the trial court held its dispositional hearing and on 19 September 2019, entered its written Disposition Order. The Disposition Order set a primary plan of reunification and a concurrent, secondary plan of guardianship. The Disposition Order ordered Quan's legal custody remain with DSS; however, it set Quan's physical placement with Respondent-Father. The Disposition Order provided, "there shall be no visitation between the Juvenile and Respondent Mother unless otherwise ordered by this Court."

On 17 October 2019, Respondent-Mother filed written Notice of Appeal from the Adjudication and Disposition Orders. The 17 October Notice of Appeal was signed by Respondent-Mother's trial counsel but was not signed by Respondent-Mother or her Guardian ad litem. On 23 October 2019, the trial court noted the appeal, and on 7 November 2019, the Office of the Parent Defender was appointed to represent Respondent-Mother on appeal. On 4 December 2019, DSS filed a Motion to Dismiss the appeal for violations of N.C. Gen. Stat. §§ 7B-1001(a)(3), (b), and (c), in that the

17 October Notice of Appeal was not signed by Respondent-Mother or her Guardian ad litem. Then, on 10 December 2019 Respondent-Mother filed an Amended Notice of Appeal, this time bearing her counsel's signature as well as the signature of Respondent-Mother's Guardian ad litem.

Contemporaneous with her brief, Respondent-Mother filed a Petition for Writ of Certiorari to this Court seeking our review of the Adjudication and Disposition Orders despite the untimely Amended Notice of Appeal on 27 January 2020. On 31 January 2020, DSS again filed a Motion to Dismiss Respondent-Mother's appeal.

## Appellate Jurisdiction

As an initial matter, Respondent-Mother's Notice of Appeal and Amended Notice of Appeal are procedurally defective. Under N.C. Gen. Stat. § 7B-1001, "[a]ny initial order of disposition and the adjudication order upon which it is based" is appealable to this Court provided: (1) the notice of appeal is given in writing by a proper party *and* made within 30 days after entry and service, and (2) the notice of appeal is signed by both the appealing party and counsel for the appealing party. N.C. Gen. Stat. § 7B-1001(a)-(c) (2019). The first Notice of Appeal was not signed by Respondent-Mother, a violation of N.C. Gen. Stat. § 7B-1001(c), nor was it signed by Respondent-Mother's Guardian ad litem. This defect was subsequently corrected in the Amended Notice of Appeal, which was signed by Respondent-Mother's Guardian ad litem. N.C. Gen. Stat. § 7B-1001(c) (2019); *see* N.C. Gen. Stat. § 1A-1, Rule 17(e)

(2019) ("Any guardian ad litem appointed for any party pursuant to any of the provisions of this rule shall file and serve such pleadings as may be required within the times specified by these rules[.]"). However, the Amended Notice of Appeal was filed on 10 December 2019, making it untimely. N.C. Gen. Stat. § 7B-1001(b). Therefore, because Respondent-Mother's Amended Notice of Appeal is untimely in violation of Section 7B-1001(b), we allow DSS's Motion to Dismiss.

However, Respondent-Mother also filed a Petition for Writ of Certiorari requesting this Court grant her appeal on the merits despite the defects in her Amended Notice of Appeal. N.C. Gen. Stat. § 7A-32(c), as implemented through Rule 21 of our Rules of Appellate Procedure, provides this Court the authority to issue a writ of certiorari "when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C.R. App. P. 21(a)(1) (2020); N.C. Gen. Stat. § 7A-32(c) (2019). Moreover, this Court has granted certiorari in cases akin to the present. *See In re A.S.*, 190 N.C. App. 679, 683, 661 S.E.2d 313, 316 (2008) ("Although the order at issue involves only an initial adjudication of neglect, the disposition could be read as ordering DSS to cease reunification efforts with respondent . . . . Given the serious consequences of the adjudication order, . . . we believe that review pursuant to a writ of certiorari is appropriate."). In our discretion, we grant Respondent-Mother's petition in order to review the merits of Respondent-Mother's case.

**Issue**

The dispositive issue on appeal is whether the trial court erred in adjudicating Quan as a dependent juvenile.

## **Standard of Review**

This Court reviews a trial court's adjudication of dependency "to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact[.]" *In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (citations and quotation marks omitted). Unchallenged findings of fact are binding on appeal. *In re V.B.*, 239 N.C. App. 340, 341, 768 S.E.2d 867, 868 (2015) (citation omitted). "The conclusion that a juvenile is abused, neglected, or dependent is reviewed *de novo*." *Id.* (citations omitted).

## **Analysis**

### I. Adjudication of Dependency

A dependent juvenile is a juvenile "in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2019). "In determining whether a juvenile is dependent, the trial court must address *both* (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of

alternative childcare arrangements." *In re T.B., C.P., & I.P.,* 203 N.C. App. 497, 500, 692 S.E.2d 182, 184 (2010) (emphasis added) (citation and quotation marks omitted). "Adjudicatory hearings for dependency are limited to determining only 'the existence or nonexistence of any of the conditions alleged in [the] petition.'" *In re V.B.*, 239 N.C. App. at 341, 768 S.E.2d at 868 (citing N.C. Gen. Stat. § 7B-802 (2013)).

Respondent-Mother challenges several of the trial court's findings of fact, asserting they are not supported by clear and convincing evidence, and further, that the findings do not support the trial court's ultimate conclusion Quan is a dependent juvenile under N.C. Gen. Stat. § 7B-101(9).

First, Respondent-Mother challenges Finding 1, which purports to find DSS filed the underlying Petition in this case on 14 February 2019. Our review of the Record reflects DSS filed a petition alleging Quan was dependent on 29 October 2018. Indeed, DSS concedes this Finding is erroneous and contends it is a typographical error. Finding of Fact 1, although not of significant consequence to the outcome of this case, is therefore not supported by clear and convincing evidence.

In Finding 6, the trial court found "[DSS] received a report of potential abuse, neglect, and/or dependency on October 25, 2018." Respondent-Mother contends this Finding is not supported by the evidence as "the trial court received no live testimony or took notice of any written document that established the existence of a report and the basis for that report being alleged 'abuse, neglect, and/or dependency on October

25, 2018.' " DSS contends this Finding is supported by clear and convincing evidence because "this finding was in the verified Petition in the Record." The Petition incorporates by reference "Exhibit A." Exhibit A states, "on October 25, 2018, [DSS] received a report of neglect dependency and injurious environment regarding the Juvenile [Quan]." Thus, Finding 6 is supported.

Respondent-Mother next challenges Finding 10—that she "refused to work a service agreement with [DSS] with respect to the other juvenile"—as unsupported by the evidence. At the dependency hearing, Social Worker LeTyssa Stokes (Stokes) testified as the foster care worker for both Quan and Respondent-Mother's older child. Counsel for DSS inquired: "And was [Respondent-Mother] able to complete a service agreement with the Department in the other case?" To which Stokes responded, "Yes, she was." Stokes stated problems arose with Respondent-Mother during that case and testified during visitations Respondent-Mother "had tried to take [the other juvenile] with her" and then that "[Respondent-Mother] tried to hit me at one point when I had [the other juvenile] in my possession." Despite Stokes' testimony that there were problems with Respondent-Mother's other case, the Record and testimony elicited at the hearing does not support the trial court's finding Respondent-Mother "refused to work a service agreement with DSS . . . ." To the contrary, Stokes' testimony established Respondent-Mother did in fact complete a service agreement

with respect to her other child. Therefore, Finding 10 is not supported by clear and convincing evidence.

In Finding 11, the trial court found Respondent-Mother's visitations with her other child were terminated due to her behaviors and the safety of the other juvenile. Again, this Finding is not supported by clear and convincing evidence. Stokes briefly testified that during visitations Respondent-Mother "had tried to take [the other juvenile] with her" and then "[Respondent-Mother] tried to hit me at one point when I had [the other juvenile] in my possession." However, Stokes did not offer any testimony to support a finding Respondent-Mother's visitation was *terminated*. The Record is similarly devoid of evidence Respondent-Mother's visitation was terminated. DSS contends that a GAL report contained in the Record and admitted at a hearing supports the Finding; however that report merely states "[the other juvenile] has no contact with the birth parents nor any siblings outside of the home or paternal or maternal grandparents' aunts or uncles." Although there is evidence and testimony describing behavioral issues during Respondent-Mother's visitation, we cannot infer from that testimony Respondent-Mother's visitation was, in fact, terminated. Accordingly, Finding 11 is not supported by clear and convincing evidence.

Finding 12 found "there were no additional family members that were available for placement of [Quan] at the time of the filing of the petition and the

Respondent-Father was merely a putative father at the time." DSS contends this Finding is supported because the Father was listed only as "putative" on the Petition and because he was not listed on the birth certificate. However, despite Respondent-Father's label as putative, which is not disputed, Exhibit A as incorporated into the Petition states Respondent-Father "claim[ed] to be Respondent Father." At the dependency hearing DSS social worker Megan Snell acknowledged Respondent-Father was Quan's father and testified she spoke with Respondent-Father on 29 October 2018, at which time he stated "if he were to be the father of [Quan] and he were to get custody of him, he would not leave [Quan] unsupervised with [Respondent-Mother]." Similarly, there is no evidence of additional family members that were available for placement; however, there is also no evidence of any efforts on behalf of DSS to locate any additional family members.

"[P]ost-petition evidence generally is not admissible during an adjudicatory hearing . . . . However, this rule is not absolute." *Id.* at 344, 768 S.E.2d at 869-70. This is particularly so in the context of post-petition evidence regarding paternity because "paternity is not a discrete event or one-time occurrence. It is a fixed and ongoing circumstance[.]" *Id.*, 239 N.C. App. at 344, 768 S.E.2d at 870.

We find this Court's reasoning in *In re V.B.* persuasive. It is worth noting the Petition in the present case was filed merely four days after Quan's birth. Based on the timeline in which DSS filed the Petition alone, under DSS's position, Respondent-

Father had only a four-day window from the time Quan was born to conclusively establish paternity that would then not be excluded as post-petition evidence. At the adjudication hearing, Quan's social worker testified regarding her conversation with Respondent-Father where he indicated he suspected he was the father *and* described measures he would take regarding Quan's supervision and care were he to have custody. Indeed, Respondent-Father's counsel questioned Stokes: "Had he been the father at [the] time [the Petition was filed], the Department would have taken proactive measures to see if he would potentially be a placement for that child before filing a petition?" To which Stokes responded, "Yes." Thus, despite the fact Respondent-Father was only identified as the "putative" father at the time of the filing of the Petition, in light of this Court's holding in *In re V.B.* and the undisputed evidence Respondent-Father established paternity, we conclude there is not clear and convincing evidence to support Finding 12.

Respondent-Mother challenges Finding 13 and contends it operates more as a conclusion of law concluding Quan is a dependent juvenile. *See In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) ("As a general rule, . . . any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law." (citations omitted)). We agree, and accordingly, we review the conclusion de novo and discern whether the trial court's remaining findings of fact support the conclusion.

Finding 13 provides:

> [T]he Juvenile is a dependent juvenile pursuant to N.C. Gen. Stat.
> §7B-101(9) in that: (i) the Juvenile needs assistance or placement
> because the Juvenile has no parent, guardian, or custodian
> responsible for the Juvenile's care or supervision; and (ii) the
> Juvenile's parent, guardian or custodian is unable to provide for
> the Juvenile's care or supervision and lacks an appropriate
> alternative child care arrangement.

"In determining whether a juvenile is dependent, the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re T.B.*, 203 N.C. App. at 500, 692 S.E.2d at 184 (citation and quotation marks omitted). "Findings of fact addressing both prongs must be made before a juvenile may be adjudicated as dependent, and the court's failure to make these findings will result in reversal of the court." *In re V.B.*, 239 N.C. App. at 342, 768 S.E.2d at 868 (citations and quotation marks omitted). "Moreover, although N.C.G.S. § 7B-101(9) uses the singular word 'the [] parent' when defining whether 'the [] parent' can provide or arrange for adequate care and supervision of a child, our caselaw has held that a child cannot be adjudicated dependent where she has at least 'a parent' capable of doing so." *Id.* (citation omitted).

Accordingly, in light of the trial court's unsupported findings, we vacate the trial court's Adjudication Order. The crux of the trial court's conclusion rests upon the fact Respondent-Mother was a ward of Cumberland County DSS and had been

diagnosed with multiple mental health issues, rendering her unable to be responsible for or provide for Quan's care. Although such findings are unchallenged on appeal, Respondent-Mother's inability to care for Quan on her own does not create a sufficient basis to adjudicate Quan dependent where Respondent-Father was known to DSS and, in fact, spoke with Quan's social worker in direct contemplation of caring for Quan. *See id.* The trial court must address "*both* (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re T.B.*, 203 N.C. App. at 500, 692 S.E.2d at 184 (emphasis added) (citation omitted). The trial court's findings do not adequately address the availability of alternative arrangements for Quan. Thus, the trial court erred in concluding Quan was dependent without making findings supported by the evidence to then support its Conclusions of Law. Therefore, we remand this matter to the trial court to make proper findings supported by the clear and convincing evidence in the Record and to re-evaluate whether Quan is a dependent juvenile as defined by N.C. Gen. Stat. § 7B-101(9).

## II. Disposition

Respondent-Mother also challenges the trial court's Disposition Order. Because we vacate the Adjudication Order, we also vacate the trial court's Disposition Order. *See In re S.C.R.*, 217 N.C. App. 166, 170, 718 S.E.2d 709, 713 (2016).

## **Conclusion**

Accordingly, for the foregoing reasons, we vacate the trial court's Adjudication Order and Disposition Order and remand this matter to the trial court for further findings of fact supported by the evidence and a new determination as to whether Quan is a dependent juvenile.

VACATED AND REMANDED.

Judges TYSON and MURPHY concur.