IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-380

Filed 19 November 2024

Caldwell County, Nos. 23 JA 111–12

IN THE MATTER OF: L.B., A.B.

Appeal by respondent-mother from order entered 9 January 2024 by Judge Mark L. Killian in Caldwell County District Court. Heard in the Court of Appeals 8 October 2024.

> *Stephen M. Schoeberle, for petitioner-appellee Caldwell County Department of Social Services.*
>
> *Brittany T. McKinney for guardian ad litem.*
>
> *BJK Legal, by Benjamin J. Kull, for respondent-appellant mother.*

THOMPSON, Judge.

Respondent-mother appeals from the trial court's order, *inter alia*, adjudicating her minor child A.B. (Annette)[1] to be a neglected and dependent juvenile and her minor child L.B. (Lincoln) to be an abused, neglected, and dependent juvenile. After careful review, we vacate the order and remand for further proceedings consistent with this opinion.

## I.    Factual Background and Procedural History

Annette was born in May 2021, and Lincoln was born in January 2023. On 21

---

[1] Pseudonyms are used throughout the opinion to protect the identity of the juveniles and for ease of reading.

September 2023, Caldwell County Department of Social Services (DSS) obtained nonsecure custody of Annette and Lincoln (the children) and filed juvenile petitions alleging that Annette was a neglected and dependent juvenile and that Lincoln was an abused, neglected, and dependent juvenile. The juvenile petitions alleged that the children were together in the same home and that Lincoln had bruising along his head, neck, back, and stomach. Respondent-mother and her husband (respondent-caretaker),[2] who had a prior child protective services history, did not seek medical attention for Lincoln after learning of his bruises.

The juvenile petitions came on for hearing on both adjudication and disposition on 13 December 2023 in Caldwell County District Court. On 9 January 2024, the trial court entered an adjudication order adjudicating Annette to be a neglected and dependent juvenile and adjudicating Lincoln to be an abused, neglected, and dependent juvenile. That same day, the trial court entered a separate disposition order continuing the children's custody with DSS. From these orders, respondent-mother filed timely written notice of appeal.

## II.    Discussion

On appeal, respondent-mother alleges the following issues:

I.    Are portions of the adjudication findings unsupported by the adjudication evidence?

II.    Do the properly made adjudication findings support the conclusions of law required for adjudications of Lincoln

---

[2] Respondent-caretaker is not the children's biological father.

and [Annette], when those findings only establish the mere
fact of Lincoln's bruises?

III. Must the juvenile petitions be dismissed because
there is no adjudication evidence from which sufficient
findings could hypothetically be made on remand?

We will address respondent-mother's arguments, as necessary, in the analysis

to follow.

## A. Standard of review

Appellate review of the trial court's adjudication and disposition order requires

us "to determine whether the trial court's findings of fact are supported by clear and

convincing competent evidence and whether the court's findings support its

conclusions of law." *In re K.L.*, 272 N.C. App. 30, 36, 845 S.E.2d 182, 188 (2020)

(internal quotation marks and citation omitted). "The clear and convincing standard

is greater than the preponderance of the evidence standard required in most civil

cases." *Id.* at 36, 845 S.E.2d at 188–89 (internal quotation marks and citation

omitted). "Clear and convincing evidence is evidence which should fully convince." *Id.*

at 36, 845 S.E.2d at 189 (internal quotation marks and citation omitted). "Whether a

child is [dependent,] abused[,] or neglected is a conclusion of law . . . and we review a

trial court's conclusions of law de novo." *Id.* "Under a de novo review, this Court

considers the matter anew and freely substitutes its own judgment for that of the

lower tribunal." *Id.* (internal quotation marks and citation omitted).

## B. Adjudication Order

Respondent-mother argues that "the properly made adjudication findings only establish the mere fact of Lincoln's bruises, [and] those findings do not support the conclusions of law required for the adjudications of either Lincoln or [Annette]." For the reasons stated herein, we agree.

**1.      Abuse**

We first address the trial court's conclusion of law that Lincoln was an abused juvenile. The Juvenile Code defines an abused juvenile as any juvenile "whose parent, guardian, custodian, or caretaker . . . [i]nflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means" or "[c]reates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means[.]" N.C. Gen. Stat. § 7B-101(1) (2023). "At its core, the nature of abuse, based upon its statutory definition, is the existence or serious risk of some nonaccidental harm inflicted or allowed by one's caretaker." *In re A.J.L.H.*, 384 N.C. 45, 53, 884 S.E.2d 687, 693 (2023) (citation and internal quotation marks omitted).

"This Court has previously upheld adjudications of abuse where a child sustains non-accidental injuries, even where the injuries were unexplained, where clear and convincing evidence *supported the inference* that the respondent-parents inflicted the child's injuries or allowed them to be inflicted." *K.L.*, 272 N.C. App. at 39, 845 S.E.2d at 190 (internal quotation marks, brackets, and citation omitted) (emphasis added). However, "[i]n each of these cases, though the exact cause of the

- 4 -

child's injury was unclear, the trial court's findings of fact—or other evidence in the record—*supported the inference* that the respondent-parents were responsible for the unexplained injury." *Id.* at 40, 845 S.E.2d at 191 (emphasis added). Although "the caselaw does not require a pattern of abuse or the presence of risk factors, we do require clear and convincing evidence to support this inference." *Id.* (internal quotation marks, brackets, and citation omitted).

In *In re K.L.¸* this Court reversed the trial court's adjudication of abuse because "[u]nlike those instances in which this Court has upheld an abuse adjudication based on unexplained injuries," there, "the trial court's detailed findings of fact . . . d[id] not sufficiently support the conclusion that [the] [r]espondents inflicted or allowed the infliction of [the minor child]'s injuries." *Id.* at 45–46, 845 S.E.2d at 194. Here, as in *K.L.*, "[t]he trial court was rightly concerned that [r]espondent[-mother and respondent-caretaker] were unable to explain [Lincoln]'s fractures[,] [b]ut that alone, as a matter of law, cannot support the trial court's conclusion that [r]espondents were responsible for [Lincoln']s injuries" or that they "allowed them to be inflicted." *Id.* at 46, 845 S.E.2d at 194.

Here, the injuries found by the trial court included "multiple bruises on [Lincoln's] head and neck, and smaller bruises on his abdomen." The trial court also found that respondent-mother and respondent-caretaker claimed that the bruises were on Lincoln when they picked him up from daycare, but the trial court made no findings as to whether it found these claims credible. There are simply not sufficient

findings of fact—or other evidence in the record—to support the inference that respondent-parents were responsible for the unexplained injury to Lincoln. Also absent from the trial court's adjudication order are *any* findings regarding the severity of the bruises found on Lincoln's body, whether the bruises sustained by Lincoln were the result of non-accidental means, whether respondent-mother or respondent-caretaker inflicted the injuries, *or* whether respondent-mother and respondent-caretaker allowed the injuries to be inflicted upon Lincoln at his daycare, as they had alleged.

A finding of fact that Lincoln had suffered multiple bruises—absent *any* other findings of fact demonstrating that Lincoln was an abused juvenile—simply does not overcome the "clear and convincing" standard that is necessary to support the trial court's conclusion of law that Lincoln was an abused juvenile. Therefore, we conclude that the trial court erred in adjudicating Lincoln an abused juvenile.

**2. Dependency**

Next, we consider the trial court's conclusion of law that Lincoln and Annette are dependent juveniles. The Juvenile Code defines a dependent juvenile, in pertinent part, as a "juvenile in need of assistance or placement because . . . the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9). Moreover, although N.C. Gen. Stat. § 7B-101(9) "uses the singular word 'the parent' when defining whether 'the parent' can provide or arrange for

adequate care and supervision of a child, our caselaw has held that a child cannot be adjudicated dependent where she has at least '*a* parent' capable of doing so." *In re V.B.*, 239 N.C. App. 340, 342, 768 S.E.2d 867, 868 (2015) (brackets and citation omitted) (emphasis added).

"In determining whether a juvenile is dependent, the trial court *must* address *both* (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re T.B.*, 203 N.C. App. 497, 500, 692 S.E.2d 182, 184 (2010) (internal quotation marks and citation omitted) (emphases added). "Findings of fact addressing both prongs *must* be made before a juvenile may be adjudicated as dependent, and the court's failure to make these findings *will* result in reversal of the court." *In re B.M.*, 183 N.C. App. 84, 90, 643 S.E.2d 644, 648 (2007) (emphases added). "When a trial court is required to make findings of fact, it must make the findings of fact specially." *In re Harton*, 156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003). "The trial court may not simply recite allegations, but must through processes of logical reasoning from the evidentiary facts find the ultimate facts essential to support the conclusions of law." *Id.* (internal quotation marks and citation omitted).

In the present case, the trial court did not sufficiently address *either* prong of dependency—whether respondent-mother *or* respondent-father[3] had the ability to

---

[3] As will be discussed below, respondent-father was a party to the adjudication hearing before the trial court.

provide care or supervision for the minor—nor did the trial court consider whether respondents had appropriate alternative child care arrangements. The juvenile petition named respondent-father as the children's father and alleged that his "[whereabouts] [are] unknown at this time." In its adjudication order, however, the trial court found that respondent-father was personally served with the juvenile petition on 17 October 2023, that he had appeared at the adjudicatory hearing, and that he was represented by counsel.

Indeed, the trial court made *no findings of fact* to support its conclusion of law that respondent-mother *or* respondent-father was unable to provide care or supervision, *or* that respondent-mother and respondent-father lacked an alternative child care arrangement. The *only* finding of fact that could be construed as bearing on the question of whether the children were dependent is Finding of Fact Fourteen, which simply mirrors the aforementioned statutory definition of dependency, that "the juveniles are dependent juveniles . . . in that the juveniles' parent, guardian, or custodian is unable to provide for the juveniles' care or supervision and lacks an alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9).

Aside from Finding of Fact Fourteen, the trial court made *no* additional findings of fact regarding respondents' ability to provide for the minor children's care or supervision, *or* that respondents lacked an alternative appropriate child care arrangement. The mere fact that there were multiple parents in the present case who *did not live with one another*, necessitated findings by the trial court as to *both*

parents and their ability to provide care or supervision, and *both* parents' ability to provide alternative child care arrangements because "a child cannot be adjudicated dependent where she has at least '*a* parent' capable of doing so." *V.B.*, 239 N.C. App. at 342, 768 S.E.2d at 868 (emphasis added). The trial court made no such findings.

Again, in reviewing an adjudication on appeal, we must determine whether the trial court's findings of fact are supported by clear and convincing competent evidence, "evidence which should fully convince[,]" that Lincoln and Annette were dependent. The dearth of findings of fact in the adjudication order—to support the trial court's conclusion of law that the minor children were dependent—fails to fully convince; for this reason, we conclude that the trial court erred in adjudicating the minor children as dependent juveniles.

**3. Neglect**

Next, we review the trial court's conclusion of law that Lincoln and Annette are neglected juveniles. A neglected juvenile is defined, in pertinent part, as a juvenile "whose parent, guardian, custodian, or caretaker . . . [d]oes not provide proper care, supervision, or discipline[,]" "[h]as abandoned the juvenile," or "[c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15). "In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home . . . where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." *Id.*

"In order to adjudicate a juvenile neglected, our courts have additionally required that there be some physical, mental, or emotional impairment of the juvenile or a *substantial risk of such impairment* as a consequence of the failure to provide proper care, supervision, or discipline." *In re A.W.*, 377 N.C. 238, 243, 856 S.E.2d 841, 847 (2021) (citation omitted) (emphasis in original). "In determining whether a child is neglected based upon the abuse or neglect of a sibling, the trial court *must* assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." *In re D.B.J.*, 197 N.C. App. 752, 755, 678 S.E.2d 778, 781 (2009) (internal quotation marks and citation omitted) (emphasis added). "Severe or dangerous conduct or a pattern of conduct either causing injury or potentially causing injury to the juvenile may include alcohol or substance abuse by the parent, driving while impaired with a child as a passenger, or physical abuse or injury to a child inflicted by the parent." *Id.* (brackets, internal quotation marks, and citation omitted).

Here, the trial court found that Lincoln sustained multiple bruises on various parts of his body, but the trial court made no findings as to the severity of the bruises, whether Lincoln sustained those bruises as a result of respondent-mother, respondent-father, or respondent-caretaker's failure to provide proper care, supervision, or discipline of Lincoln, or whether respondent-mother, respondent-father, or respondent-caretaker created or allowed to be created a living environment injurious to Lincoln's welfare. *See generally In re J.C.M.J.C.*, 268 N.C. App. 47, 834

S.E.2d 670 (2019) (reversing adjudication of neglect where, although the children had multiple absences from school, there were no findings regarding the reason they missed classes, how many of their absences were unexcused, or to what degree the children were academically behind).

Indeed, the trial court failed to make "affirmative findings of fact that would support a conclusion that the children are neglected"; in other words, "[t]hese findings do not support a conclusion that [r]espondents did not 'provide proper care, supervision, or discipline[,]' or that the children were living in an environment injurious to their welfare." *Id.* at 58, 834 S.E.2d at 678. There are simply no findings in the adjudication order that bear on the question of whether the children were neglected—aside from the fact that Lincoln had multiple bruises on various parts of his body. Again, this finding, standing alone, is insufficient to establish that Lincoln was neglected.

Furthermore, the finding that respondent-caretaker and respondent-mother "led the children out of the home and placed them in [DSS's] car" is insufficient to show that they abandoned the children. *See In re Adoption of Searle*, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986) ("Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child.").

Finally, very few of the trial court's findings concern Annette. The trial court found that she was in the same home as Lincoln and that she was "emotionless" and

"singing in the backseat" when DSS drove the children away from their home. It appears that the trial court based its adjudication of Annette as a neglected juvenile upon its conclusions that Lincoln was an abused, neglected, and dependent juvenile— simply because Annette shared a home with Lincoln—she was by proxy, neglected and dependent.

However, as established above, the trial court erred in concluding that Lincoln was an abused, dependent, or neglected juvenile, and the trial court's conclusions of law that Annette was neglected or dependent—based on the trial court's adjudication of Lincoln—were also erroneous. Again, *the only* findings of fact in the adjudication order relating to Annette found that "[t]he juveniles were emotionless when they left home" and that Annette "was singing in the backseat." These two findings, *standing alone*, are simply insufficient to support the trial court's conclusion of law that Annette was a neglected juvenile.

Moreover, assuming that Annette was adjudicated neglected based upon the abuse of Lincoln, the trial court *also* failed to assess whether there was a substantial risk of future abuse or neglect to Annette based on the historical facts of the case, as is *required* by our caselaw to adjudicate a minor child neglected based upon abuse of a sibling. For the aforementioned reasons, we conclude that the trial court erred in concluding that Lincoln and Annette are neglected juveniles.

Because we vacate the trial court's adjudications, we must also vacate the 9 January 2024 disposition order and remand for entry of a disposition, if warranted

by the proceedings on remand. *See In re S.C.R.*, 217 N.C. App. 166, 170, 718 S.E.2d 709, 713 (2011) ("Since we [vacate] the adjudication order, the disposition order must also be [vacat]ed . . . .").

## C. Juvenile petition

Finally, respondent-mother argues that "the juvenile petitions must be dismissed because there is no adjudication evidence from which sufficient findings could hypothetically be made on remand." We do not agree.

Here, the evidentiary record before the trial court *could* have been sufficient to support the trial court's conclusions of law that Lincoln was an abused, neglected, and dependent juvenile, and that Annette was a dependent and neglected juvenile; the trial court's order to that effect was simply insufficient. Indeed, the trial court heard testimonial evidence that respondent-mother and respondent-caretaker continued to send Lincoln to a daycare where he had suffered several bruises, without offering a reasonable explanation as to why they would continue to subject their child to this *potentially* injurious environment. "The trial court has the duty of determining the credibility and weight of all the evidence, and only the trial court can make the findings of fact resolving any conflicts in the evidence." *In re A.H.D.*, 287 N.C. App. 548, 564, 883 S.E.2d 492, 504 (2023). Consequently, we conclude that the juvenile petitions are not *required* to be dismissed because the trial court heard evidence from which it *could* have made the challenged conclusions of law.

### III.    Conclusion

- 13 -

We conclude that the adjudication order's findings of fact do not support the trial court's conclusions of law that Lincoln was an abused, neglected, and dependent juvenile, or that Annette was a neglected and dependent juvenile. However, because the record contains evidence that could support the trial court's adjudications, we vacate the 9 January 2024 adjudication order and remand the matter to the trial court for additional findings of fact.

VACATED AND REMANDED.

Judges MURPHY and GRIFFIN concur.